## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**JENNIFER ERRICKSON**
2207 East 12th Street
Number 93
Pueblo, CO 81001

**MARK TROVATO**
2828 Mertensia Lane
Henrietta, NY 14467

     Plaintiffs,

***Individually and on Behalf of All***
***Similarly Situated Employees***

v.

**PAYCHEX, INC.**
911 Panorama Trail South
Rochester, NY 14625
Serve:  C T Corporation System
    28 Liberty St.
    New York, NY 10005

     Defendant.

Civil Action No:


Collective Action Claim


Class Action Claim


Jury Trial Requested

### COLLECTIVE ACTION COMPLAINT FOR WAGES OWED

    Plaintiffs Jennifer Errickson and Mark Trovato ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against Paychex, Inc. ("Defendant"), to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under New York Minimum Wage Act, Labor Law § 650, *et seq.* and the New York Wage

Payment Act, Labor Law § 190, *et seq.*, (collectively, the "NYLL"); and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant is a human resources services company headquartered in Rochester, New York. Defendant operates in multiple states and maintains over one hundred (100) offices across the country. Plaintiffs and other similarly situated employees were hired by Defendant to assist its clients with their payroll and benefits services. Plaintiffs and others similarly situated were all given the title of Implementation Coordinator and/or Implementation Project Manager. However, Defendant failed to properly compensate Plaintiffs and others similarly situated for all hours worked. Defendant completed this illegal act by paying Plaintiffs and others similarly situated under the guise of a salary. However, Plaintiffs' duties did not exempt them from the overtime requirements mandated by the FLSA and NYLL. Defendant willfully misclassified Plaintiffs and others similarly situated as salaried employees for the purpose of not paying them overtime. Through this unlawful scheme, Defendant intentionally evaded the payment of wages owed to Plaintiffs and others similarly situated.

## JURISDICTION AND VENUE

1.      Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.

2.      Pursuant to 28 U.S.C. § 1331, this Court also has subject matter jurisdiction, as this action is brought under the FLSA, 29 U.S.C. § 201, *et seq.*

3.      Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court, Western District of New York; Defendant's corporate headquarters and principal place of business are located in this district. Defendant also employs members of the proposed collective class and transacts business in the Western District of New York. A substantial part of the events or

omissions giving rise to the claims also occurred in this district.

## PARTIES

4.     Defendant Paychex, Inc. ("Defendant") is a corporation registered in Delaware.

5.     Defendant maintains its corporate headquarters in Rochester, New York.

6.     Defendant conducts business throughout the United States.

7.     Defendant has offices in Alabama, Arizona, Arkansas, Calilfornia, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington and Wisconsin.

8.     Due to the nature of its business, Defendant is subject to the FLSA and NYLL.

9.     Due to the amount in revenues generated, Defendant is subejct to the FLSA and NYLL; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

10.    From approximately October 2016 to July 2017, Plaintiff Jennifer Errickson ("Errickson") was employed by Defendant as an Implementation Project Manager.

11.    Plaintiff Errickson is an adult resident of the State of Colorado.

12.    During her employment with Defendant, Plaintiff Errickson worked remotely from her residence in Missouri.

13.    At all relevant times, Plaintiff Errickson met the definition of an employee for Defendant, as the term is defined within the FLSA, 29 U.S.C. § 203.

14.    From approximately March 2016 to April 2017, Plaintiff Mark Trovato was employed by Defendant as an Implementation Coordinator.

15.     Plaintiff Trovato is an adult resident of the State of New York.

16.     During his employment with Defendant, Plaintiff Trovato worked from Defendant's office in Rochester, New York.

17.     At all relevant times, Plaintiff Trovato was Defendant's employee, as this term is defined within the FLSA, 29 U.S.C. § 203.

18.     Within the meaning of the FLSA, 29 U.S.C. § 203(d), at all relevant times to this Complaint, Defendant met the definition of an "employer" and has engaged in interstate commerce and/or the production of goods for commerce.

19.     At all times relevant, Plaintiffs engaged in interstate commerce by the nature of the duties they performed as part of their employment with Defendant.

20.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and other similarly situated employees.

21.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and others similarly situated.

22.     Defendant possessed and exercised the authority to determine the hours worked by Plaintiffs and others similarly situated.

23.     Defendant had the power and authority to control the nature of the duties performed by Plaintiffs and other similarly situated employees.

24.     Plaintiffs and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

25.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

26.    Defendant offers a wide variety of human resources services and software designed to meet its clients' payroll and benefits needs.

27.    To assist its clients during the process of implementing these services and software, Defendant employed Plaintiffs and other similarly situated employees to work as Implementation Coordinators and Implementation Project Managers (collectively, "Implementation Rep(s)").

28.    Despite their titles, Plaintiffs' and other Implementation Reps' duties were non-managerial in nature. Their work largely consisted of providing non-technical support and routine customer service.

29.    Plaintiffs and others similarly situated served as liaisons between Defendant's clients and the development teams responsible for implementing Defendant's products. Plaintiffs' and other Implementation Reps' duties centered on maintaining routine communications with clients for purposes of answering any questions they had. This primarily consisted of conveying general information in reference to a client's service plans and providing updates regarding all service requests. There were basic protocols aligned with all of the tasks they performed.

30.    Plaintiffs and others similarly situated were responsible for handling numerous ongoing projects specific to Defendant's clients. The expectation was that Plaintiffs and other Implementation Reps would have thirty (30) to thirty-five (35) clients at one time. However, in reality, Plaintiffs and others similarly situated were responsible for significantly more than that.

31.    Plaintiffs and other Implementation Reps were required to schedule a "welcome call" with a customer within twenty-four (24) hours of being assigned to a new project. Plaintiffs and other Implementation Reps were required to discuss specific scripted topics on each call.

32.    Plaintiffs and others similarly situated were also required to respond to any customer inquiries within twenty-four (24) hours. These inquiries were typically nothing more

than routine requests for status updates. Each inquiry required the scheduling of a follow-up call for purposes of relaying information responsive to the client's inquiry regarding their software.

33.     Plaintiffs were not involved with managing or coordinating the implementation of Defendant's software. There were specialized teams managed by Defendant's other employees who were responsible for these tasks.

34.     The focus of Plaintiffs' and other Implementation Reps' tasks was customer service. From the initial welcome call until the completion of the implementation process, Plaintiffs were responsible for all customer service related duties. Only when a client's software was fully implemented were Plaintiffs' and other Implementation Reps' customer service duties complete.

35.     While performing their duties, Plaintiffs and other implementation personnel did not require any specialized training or advanced knowledge. All of their tasks were basic in nature. They did not have any true decision-making authority.

36.     Rather than make substantive determinations, Plaintiffs and others similarly situated were solely responsible for conveying basic information between Defendant's customers and Defendant's development teams.

37.     In their roles as Implementation Project Managers and Implementation Coordinators (collectively, "Implementation Rep(s)"), Plaintiffs and others similarly situated did not perform any analysis.

38.     Plaintiff and other Implementation Reps lacked discretion altogether; the performance of their duties did not require independent judgement.

39.     In their roles as Implementation Reps, Plaintiffs and others similarly situated did not have any input regarding the manner in which their tasks were completed.

40.     Plaintiffs and other Implementation Reps did not have any input in regard to Defendant's employment policies or procedures.

41.     Plaintiffs and other Implementation Reps did not have the authority to hire or fire employees.

42.     Plaintiffs and other Implementation Reps were not responsible for any supervisory tasks.

43.     Plaintiffs and others similarly situated satisfied the requirements of their positions and adequately performed their duties to benefit Defendant.

44.     Plaintiffs and other Implementation Reps were all paid a salary. They received the same bi-weekly payments regardless of the number of hours they worked each week.

45.     During her time as an Implementation Project Manager, Plaintiff Errickson received an annual salary of approximately sixty-two thousand five hundred dollars ($62,500.00). She was paid the same bi-weekly salary regardless of the number of hours she worked each week.

46.     During his time as an Implementation Coordinator, Plaintiff Trovato received an annual salary of approximately forty-five thousand dollars ($45,000.00). His bi-weekly payments did not change, regardless of the number of hours he worked each week.

47.     Plaintiffs and others similarly situated were scheduled to work forty (40) hours each week. They were scheduled to work five (5) days a week, Monday through Friday. However, the hours they actually worked far exceeded this schedule.

48.     Due to the sheer number of projects they had to handle, Plaintiffs' and other Implementation Reps' workload was extreme. Serving as the liaisons for all of these projects resulted in them having to prepare correspondence at all times throughout the day, including times they were not scheduled to work. These conditions caused Plaintiffs and other Implementation

Reps to regularly work over forty (40) hours a week.

49.     Having to always remain available to answer customer inquiries also caused Plaintiffs and other Implementation Reps to work hours outside of their schedule. The strict deadlines imposed by Defendant in regard to when Plaintiff and other Implementation Reps had to respond to each inquiry forced them to work before and after their scheduled shifts.

50.     Understaffing also contributed to Plaintiffs and others similarly situated having to work more than their scheduled hours. Defendant failed to provide an adequate number of personnel to meet the demands of its business. This includes not staffing the requisite number of customer service representatives to meet its clients' needs.

51.     As a result, Plaintiffs and others similarly situated were required to handle tasks that should have been completed by Defendant's customer service representatives. Having to perform tasks that should have been completed by other employees significantly increased Plaintiffs' and other Implementation Reps' workload.

52.     Due to the demands of their workload, it was common for Plaintiffs and others similarly situated to work early in the morning, late in the evening, as well as on weekends. The demands of their employment also required them to work remotely in order to keep up with their daily tasks. The volume of their assignments left no other choice.

53.     Due to all of these conditions, Plaintiffs and others similarly situated worked well over forty (40) hours each week. Working overtime was integral to their employment. Plaintiffs consistently worked fifty (50) to sixty (60) hours each week. There were times when they worked even more.

54.     Plaintiffs and others similarly situated should have been paid overtime ("time-and a-half") wages each week they worked over forty (40) hours. However, they were denied overtime

wages altogether.

55.     Defendant accomplished this illegal act by willfully misclassifying Plaintiffs and other Implementation Reps as salaried employees. Accordingly, Plaintiffs and others similarly situated failed to receive overtime wages.

56.     There is no bona fide dispute that Plaintiffs and other similarly situated employees are owed overtime wages for all hours worked over forty (40) in a week.

57.     The duties performed by Plaintiffs and others similarly situated did not implicate any exemptions contained within the FLSA or NYLL.

58.     Defendant was well aware that the nature of the tasks performed by Plaintiffs and others similarly situated entitled them to overtime wages.

59.     Defendant knew of the excessive overtime hours worked by Plaintiffs and others similarly situated.

60.     Defendant's upper management officials were well aware that Plaintiffs and other Implementation Reps had to consistently work well over forty (40) hours a week to complete their assigned tasks.

61.     In bad faith, Defendant suffered, permitted and/or required Plaintiffs and others similarly situated to work these overtime hours.

**FLSA COLLECTIVE ACTION FACTUAL ALLEGATIONS**

62.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs brings this action on behalf of themselves and all other similarly situated employees.

63.      Plaintiffs and all those similarly situated worked as Implementation Coordinators and Implementation Project Managers (or in other positions with similar job duties) for Defendant.

64.     As   Implementation   Coordinators   and   Implementation   Project   Managers
(collectively, "Implementation Reps"), Plaintiffs and the FLSA collective are or were employed
by Defendant within the meaning of the FLSA.

65.     Plaintiffs and other Implementation Reps were all paid a salary.

66.     The proposed FLSA collective class is defined as:

> All persons who work or worked as salaried Implementation Coordinators,
> Implementation Project Managers, or in other positions with similar job
> duties for Defendant at any time during the last three (3) years prior to the
> filing of this Complaint through the entry of judgment (the "FLSA
> collective").[1]

67.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs have consented to be a part of this action.
Plaintiffs' signed consent forms are attached as **Exhibit A**.  As this case proceeds, it is likely that
additional individuals will file consent forms and join as "opt-in" Plaintiffs.

68.     At all times relevant to this Complaint, Plaintiffs and other members of the FLSA
collective worked as non-exempt employees eligible for overtime pay.

69.     The duties assigned to Plaintiffs and other similarly situated employees do not
satisfy the duties tests contained within any of the exemptions specified in the FLSA.

70.     Defendant operated under a common policy of suffering, permitting and/or
requiring Plaintiffs and the FLSA collective to work unpaid overtime hours.

71.     Defendant knew, or should have known, that Plaintiffs and the FLSA collective
routinely worked unpaid overtime hours.

72.     Defendant imposed time limits and caseload requirements that resulted in Plaintiffs
and the FLSA collective to work excessive hours.

---

[1] The proposed FLSA collective is limited to Implementation Coordinators and Implementation
Project Managers who work for Defendant as W-2 employees. The collective group does not
include those working for Defendant as "independent contractors."

73.     Plaintiffs and the FLSA collective regularly worked over forty (40) hours per workweek to meet Defendant's production requirements.

74.     Defendant failed to pay Plaintiff and the FLSA collective for the overtime hours they worked.

75.     Defendant's unlawful conduct was widespread, repetitious and consistent, affecting Plaintiffs and all members of the FLSA collective equally.

76.     Defendant's conduct was willful and in bad faith.

77.     Defendant's conduct has caused significant damages to Plaintiffs and the FLSA collective.

78.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA collective.

79.     There are numerous similarly situated current and former employees of Defendant who have been denied proper overtime compensation, in violation of the FLSA.

80.     These similarly situated employees would benefit from the issuance of court-supervised notice of this lawsuit by providing an opportunity to join.

81.     Notice of this action should be sent to all similarly situated Implementation Coordinators and Implementation Project Managers.

82.     These similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

**CLASS ACTION ALLEGATIONS UNDER NEW YORK LABOR LAW**

83.     Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Trovato brings this action on behalf of himself and other current and former employees

who worked for Defendant as Implementation Coordinators and Implementation Project Managers in New York.

84.     The class Plaintiff seeks to represent is defined as:

All individuals who are or were employed by Defendant as salaried "Implementation Coordinators," "Implementation Project Managers" and/or in similar positions in the state of New York and who have been denied, overtime and meal and rest period compensation as required by the respective state labor laws and implementing regulations at any time within six (6) years prior to the filing date of this action through the date of final disposition.

85.     The proposed class is so numerous that joinder of all members is impracticable. During the relevant period, Defendant employed dozens of Implementation Coordinators and/or Implementation Project Managers in the state of New York.

86.     The claims of the named Plaintiff are typical to the members of the proposed class. The named Plaintiff and those similarly situated regularly worked more than forty (40) hours per week, including working through meal and rest periods, and were denied overtime compensation. Each member of the class was paid a salary that remained unchanged, regardless of the amount of hours they worked each week. As a result, each and every class member suffered the same harm.

87.     Each class member's claim is controlled by New York's wage and hour statutory scheme and one set of facts. Pursuant Fed. R. Civ. P. 23(b)(3), questions of law and fact are common to the class and predominate over any individual questions. Such common questions of law and fact include, but are not limited to, whether the Rule 23 Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime; and whether Defendant violated NYLL by failing to pay Plaintiff and the class overtime compensation for hours worked in excess of forty (40) hours per workweek.

88.     Pursuant to Fed. R. Civ. P. 23(b)(1)(A), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources and incentives to prosecute separate lawsuits against their employer. The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not promote judicial efficiency or equity, nor result in consistent results. Class certification will eliminate the need for duplicate litigation.

89.     Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted, or has refused to act, on grounds generally applicable to the Rule 23 class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

90.     Plaintiff will fully and adequately protect the interests of the class. Plaintiff seeks the same recovery as the class, predicated upon the same violations of law and the same damage theory. Plaintiff has retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the class.

## **CAUSE OF ACTION**

### **COUNT I – Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiffs and the FLSA Collective**

91.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

92.     The FLSA, 29 U.S.C. § 207, requires employers to pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

93.     Plaintiffs and the FLSA collective are non-exempt employees entitled to FLSA overtime compensation for all hours worked in excess of forty (40).

94.     Plaintiffs and the FLSA collective work(ed) in excess of forty (40) hours per week, but did not receive appropriate overtime compensation.

95.     Defendant failed to accurately record the actual hours worked by Plaintiffs and the FLSA collective.

96.     Defendant willfully and intentionally failed to compensate Plaintiffs and the FLSA collective for the overtime hours they worked.

97.     There is no *bona fide* dispute that Plaintiffs and other similarly situated employees are owed overtime wages for the work they performed for Defendant.

98.     The foregoing conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

99.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and those similarly situated have suffered and will continue to suffer a loss of income and other damages.

## COUNT II – Violation of the New York Labor Law: Failure to Pay Overtime Wages to Plaintiff and the Rule 23 Class

100.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

101.    Pursuant to the New York Labor Law, each employer shall pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

102.    Plaintiff and the Rule 23 class are non-exempt employees entitled to overtime compensation for all hours worked in excess of forty (40).

103.    Plaintiff and the proposed Rule 23 class work(ed) in excess of forty (40) hours per week, but did not receive the appropriate overtime compensation from Defendant.

104.    Defendant unlawfully compensated Plaintiff and the class by paying them a salary.

105.    Defendant willfully and intentionally failed to compensate Plaintiff and the rule 23 class for the overtime hours they worked.

106.    There is no *bona fide* dispute that Plaintiff is owed overtime wages for the work he performed for Defendant.

107.    Defendant acted willfully and with reckless disregard of clearly applicable provisions of the NYLL.

108.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the class have suffered and will continue to suffer a loss of income and other damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief:

A.    Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

B.    Pursuant to 29 U.S.C. § 216(b), prompt issuance of notice to all those similarly situated apprising them of the pendency of this action and permitting them to assert timely FLSA claims by filing individual consent forms.

C.    Designation of this action as a class action on behalf of Plaintiffs and all members of the proposed state classes;

D.    Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

E.    Judgment that Defendant's classification of Plaintiffs and similarly situated employees as exempt was done in error and that Defendant failed to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA and the NYLL;

F.  Judgment that Defendant's violations were willful;

G.  Judgment that Defendant failed to maintain accurate time records of all the hours worked by Plaintiffs, in violation of the FLSA;

H.  An award in an amount equal to Plaintiffs' and the similarly situated employees' unpaid back wages at the applicable overtime rate;

I.  An award to Plaintiffs and those similarly situated for the amount of unpaid wages owed, liquidated damages and other penalties provided by law and interest thereon;

J.  An award of prejudgment interest to the extent liquidated damages are not awarded;

K.  Pursuant to 29 U.S.C. § 216 and/or other applicable laws, an award of reasonable attorneys' fees and costs to be satisfied in full by Defendant; and

L.  All further relief deemed just and equitable by this Honorable Court.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the FLSA collective request that a jury of their peers hear and decide all possible claims.

Respectfully submitted,

**THE LAW OFFICES OF PETER T. NICHOLL**
Benjamin L. Davis, III
bdavis@nicholllaw.com
Kelly A. Burgy
kaburgy@nicholllaw.com
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (410) 244-7005

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE FLSA COLLECTIVE CLASS**

16