UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



———————————————————

JENNIFER ERRICKSON and MARK
TROVATO, on behalf of themselves and all
other employees similarly situated,

Plaintiffs,

     v.

PAYCHEX, INC.,

Defendant.

———————————————————

SCOTT MERCIER, on behalf of himself and
all other employees similarly situated,

Plaintiff,

     v.

PAYCHEX, INC.

Defendant.

———————————————————

**DECISION AND ORDER**

6:19-CV-06347 EAW

6:19-CV-06452 EAW

## **INTRODUCTION**

Pending before the Court are two related actions against Defendant Paychex, Inc. ("Paychex" or "Defendant"), claiming unpaid wages and overtime pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and New York law, specifically the Minimum Wage Act, Labor Law §§ 650, *et seq*., and the New York Wage Payment Act, Labor Law §§ 190, *et seq*. (collectively "NYLL"). The first action, *Errickson v. Paychex*, 19-cv-06347 ("Errickson Action"), initiated by Plaintiffs Jennifer Errickson and Mark Trovato ("Errickson Plaintiffs"), generally alleges that

salaried Paychex employees with the job titles of Implementation Coordinator or Implementation Project Manager were misclassified and entitled to overtime pay pursuant to the FLSA and the NYLL. (Dkt. E-1[1]). The Errickson Plaintiffs allege that although they worked more than forty hours per week, they did not receive overtime pay. The second action, *Mercier v. Paychex*, 19-cv-06452 ("Mercier Action"), commenced by Plaintiff Scott Mercier ("Mercier"), generally alleges that hourly-paid Paychex employees with the job titles of Implementation Coordinator were not paid for all hours worked, and when that work exceeded forty hours per week, they did not receive overtime pay. (Dkt. M-12).

The Errickson Plaintiffs and Mercier (collectively "Plaintiffs"), now separately move in each action for conditional certification of a collective action pursuant to the FLSA and to issue Court-authorized notice. (Dkt. E-7; Dkt. M-16). In both actions, Paychex filed separate motions for partial summary judgment, asking this Court to find that arbitration agreements with collective action waivers, which were allegedly executed by a significant number of salaried Implementation Coordinators or Implementation Project Managers in the Errickson Action and hourly-paid Implementation Coordinators in the Mercier Action, are valid and enforceable. (Dkt. E-12; Dkt. M-28). Paychex also asks the Court to dismiss the claims of opt-in Plaintiff Szczublewski, who signed such an agreement. (Dkt. M-28). In its opposition to Plaintiffs' motions, Paychex argues that those who signed an arbitration agreement cannot be part of any collective action. In the Mercier

---

[1]     References to numbered docket entries prefaced with an "E" refer to documents filed in the Errickson Action, *Errickson v. Paychex*, 6:19-cv-06347, and references to numbered docket entries prefaced with an "M" refer to documents filed in the Mercier Action, *Mercier v. Paychex*, 6:19-cv-06452.

Action, Paychex also opposes conditional certification on the grounds that Mercier has not established that he is similarly situated to other hourly-paid Implementation Coordinators, irrespective of whether those Implementation Coordinators also executed arbitration agreements.

For the reasons set forth below, the Errickson Plaintiffs' motion for conditional certification is granted in part. The Court conditionally certifies a collective action class of salaried Implementation Coordinators and Implementation Project Managers who have not entered into arbitration agreements. Within twenty-one (21) days of filing of the Court's Decision and Order, Defendant is ordered to provide to Plaintiffs' counsel an Excel spreadsheet with a list of current and former salaried Implementation Coordinators or Implementation Project Managers employed within three years of the filing of the Complaint in the Errickson Action who have not signed arbitration agreements, including those individuals' titles, names, addresses, telephone numbers, email addresses, and dates and location(s) of employment. The Errickson Plaintiffs will be permitted to send notice to those individuals by mail and email. Paychex's motion for partial summary judgment is denied.

Mercier's motion for conditional certification is granted in part. The Court conditionally certifies a collective action class of hourly-paid Implementation Coordinators who have not entered into arbitration agreements. However, the scope of this conditional certification is limited to hourly-paid Implementation Coordinators who work or worked out of the Rochester, New York Multi Product Service Center. Within twenty-one (21) days of filing of the Court's Decision and Order, Defendant is ordered to provide to

Plaintiffs' counsel an Excel spreadsheet with a list of current and former hourly-paid Implementation Coordinators who work or worked out of the Rochester, New York Multi Product Service Center within three years of the filing of the Complaint in the Mercier Action who have not signed arbitration agreements, including those individuals' titles, names, addresses, telephone numbers, email addresses, and dates and location(s) of employment.  Mercier will be permitted to send notice to those individuals by mail and email.  Opt-in Plaintiff Szczublewski ("Szczublewski") is not similarly situated to Mercier, and her claim is dismissed without prejudice.  Paychex's motion for partial summary judgment is denied.

The parties are instructed to meet and confer regarding the proposed Court-authorized notices and opt-in consent forms and to submit jointly-proposed notices and forms in each action within thirty (30) days from the filing of this Decision and Order.  If the parties are unable to agree, they may file separate submissions.

## **BACKGROUND**

On May 9, 2019, the Errickson Plaintiffs initiated their putative collective action against Paychex pursuant to the FLSA and NYLL.  (Dkt. E-1).  Shortly thereafter, on June 21, 2019, Mercier initiated a separate putative collective action against Paychex, also pursuant to the FLSA and NYLL.  (Dkt. M-1).

Paychex answered the Errickson Action on June 28, 2019.  (Dkt. E-9).  The Errickson Plaintiffs filed their motion for conditional certification and to issue Court-authorized notice on June 25, 2019.  (Dkt. E-7).  On July 10, 2019, Paychex filed its

opposition to that motion (Dkt. E-13) and filed a motion for partial summary judgment. (Dkt. E-12).

The Mercier Action was the subject of a motion to dismiss, and thus proceeded more slowly. On July 29, 2019, Paychex filed a motion to dismiss the complaint for failure to state a claim. (Dkt. M-5). Mercier ultimately filed an Amended Complaint on August 23, 2019,[2] and the motion to dismiss was withdrawn. (Dkt. M-12; Dkt. M-14). On September 11, 2019, Mercier filed his motion for conditional certification and to issue Court-authorized notice. (Dkt. M-16). Paychex answered the Amended Complaint on September 25, 2019. (Dkt. M-20). On October 25, 2019, Paychex opposed Mercier's motion (Dkt. M-27) and filed its motion for partial summary judgment (Dkt. M-28).

The Errickson Plaintiffs allege that at each of its offices, Paychex employs individuals as Implementation Coordinators and Implementation Project Managers. (Dkt. E-1 at ¶¶ 27-28). Plaintiff Errickson worked as an Implementation Project Manager, though her title was originally Implementation Coordinator, and Plaintiff Trovato worked as an Implementation Coordinator. (Dkt. E-1 at ¶ 10, 14; Dkt. E-72 at ¶ 6). The Errickson Plaintiffs, who were salaried employees, allege that they were misclassified as exempt employees, regularly worked more than 40 hours per week, and did not receive overtime pay, in violation of the FLSA and NYLL. (Dkt. E-1 at ¶¶ 91-108).

---

[2]     On June 26, 2019, Barbara Szczublewski filed a Notice of Consent to Become a Party Plaintiff in the Mercier Action. (Dkt. M-4). Although Mercier refers to her as a Plaintiff, Szczublewski was not included as a named plaintiff when the Amended Complaint was filed on August 23, 2019. (Dkt. M-12). Szczublewski is an opt-in Plaintiff in the Mercier Action, and is referred to as such in this Decision and Order.

Mercier and Szczublewski allege that they were both employed as Implementation Coordinators.  Both Mercier and Szczublewski were paid hourly, as opposed to salaried.  (Dkt. 16-2 at 5, 7).  They allege that they were not credited for all of their time worked and were denied overtime wages, in violation of the FLSA and NYLL.  (Dkt. 12 at ¶¶ 85-101; Dkt. 16-2 at 4-5, 9-10).  Because Mercier and Szczublewski were paid differently than the Errickson Plaintiffs, and thus likely not similarly situated, two separate collective actions were initiated.

## DISCUSSION

### I.  Plaintiffs' Motions for Conditional Certification of Collective Actions pursuant to the FLSA and to Issue Court-Authorized Notice

In both actions, Plaintiffs seek to conditionally certify a collective action class pursuant to the FLSA, seek specific information regarding those who may opt in to the collective action, and propose the content of a Court-authorized notice to be sent to them.  In both actions, Defendant argues that employees who have signed valid arbitration agreements are not proper members of any collective action class.  If those who have signed a valid arbitration agreement are excluded, Defendant does not dispute that salaried Implementation Coordinators and Implementation Project Managers are an appropriate conditional class in the Errickson Action.  In contrast, in the Mercier Action, Defendant argues that the nature of Mercier's allegations requires an individualized inquiry and thus, opposes the conditional certification of any collective class in that action.  In both actions, Defendant also challenges various aspects of the proposed notices as well as the breadth of information sought about the members of the putative collective classes.  Although both

actions include claims under the NYLL, Plaintiffs do not presently seek to certify classes pursuant to Federal Rule of Civil Procedure 23 with respect to any state law claims.

A.    **Legal Standard for Conditional Certification Under the FLSA**

"Section 216(b) of the FLSA authorizes collective actions to recover damages for unpaid wages where all employees are 'similarly situated.'" *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 297 (S.D.N.Y. 2015) (quoting 29 U.S.C. § 216(b)). "[D]istrict courts 'have discretion, in appropriate cases, to implement [the collective action provisions of 29 U.S.C. § 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989)).  This is often referred to as certification, although as the Second Circuit observed in *Myers*, it is not "certification" in the traditional class action sense and "nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Id.* at 555 n. 10.

While making clear that this approach is "not required by the terms of FLSA or the Supreme Court's cases," the Second Circuit has endorsed as "sensible" the two-step method employed by district courts for determining whether they should exercise their discretion to certify collective actions under § 216(b):

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred.  The

court may send this notice after plaintiffs make a modest factual showing that
they and potential opt-in plaintiffs together were victims of a common policy
or plan that violated the law. . . . At the second stage, the district court will,
on a fuller record, determine whether a so-called "collective action" may go
forward by determining whether the plaintiffs who have opted in are in fact
"similarly situated" to the named plaintiffs. The action may be "de-certified"
if the record reveals that they are not, and the opt-in plaintiffs' claims may
be dismissed without prejudice.

*Id.* at 555 (citations omitted).

The first step is typically referred to as "conditional certification." *Winfield v.
Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012). On a motion for conditional
certification, "the court does not resolve factual disputes, decide substantive issues going
to the ultimate merits, or make credibility determinations." *Cunningham v. Elec. Data Sys.
Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (citations omitted).

### B.    Mercier has made the modest showing required for conditional certification of a collective action class that is limited in scope

Paychex does not contest that Implementation Coordinators all perform the same
work. Instead, Paychex argues that Mercier and Szczublewski are not similarly situated to
other Implementation Coordinators, or even to each other. As a result, Paychex posits that
Mercier cannot demonstrate a common policy or plan that violates the FLSA. The crux of
Defendant's argument is that Mercier's and Szczublewski's allegations rely on the
behavior of discrete supervisors and are also too vague to suggest a company-wide practice.

In his Amended Complaint, Mercier alleges that Defendant has offices in thirty-nine
states. (Dkt. M-12 at ¶ 7). Mercier, a resident of Monroe County, New York, worked
primarily from home. (Dkt. M-16-2 at 2-3, ¶¶ 2, 6). Szczublewski, a resident of Erie
County, New York, worked in Paychex's office in Getzville, New York. (*Id.* at 7-8, ¶¶ 2,

- 8 -

6).  Aside from Mercier and Szczublewski, some hourly-paid Implementation Coordinators worked from their homes, while others worked from Defendant's offices.  (Dkt. M-16-2 at 8, ¶ 6; *id.* at 3, ¶ 6).

Mercier alleges that he was prevented from taking lunch breaks, and that he was not paid for this work or work performed before and after his shifts and on weekends.  (*Id.* at 4-5, ¶¶ 11-14, 17).  He claims that he routinely worked two hours of overtime each week and that "[t]he same is true for Paychex's other implementation coordinators."  (*Id.* at 4-5, ¶ 15).  He generally alleges that "[b]ecause I regularly communicated with other Implementation Coordinators, I know that we all had to work overtime regularly.  Working through lunch and before and after our workday was scheduled to end were both common occurrences.  This was the only way we could finish all of our tasks."  (*Id.*).  Instructing Implementation Coordinators "not to record all of their time worked" was a "company-wide policy," and Mercier alleges that for him, this policy came in the form of directives from Implementation Supervisor Steve Vance ("Vance") and Implementation Manager Fatin Sherry ("Sherry").  (*Id.* at 5, ¶ 17).  Mercier then generally alleges that unspecified "management officials" routinely told him and other Implementation Coordinators "not to record the time we worked before and after our shifts, on weekends and during our lunch break."  (*Id.*).

Szczublewski alleges that she and other Implementation Coordinators regularly worked over 40 hours per week but did not receive overtime pay.  (*Id.* at 9-10, ¶ 15).  She claims that it was Paychex's policy not to pay Implementation Coordinators correctly, because she and other Implementation Coordinators were instructed by "Paychex's

management officials" not to record all of their time worked and were "routinely" told that they must "'clock in and out' for lunch, regardless of whether we actually took a break." (*Id.* at 10, ¶ 16). According to Szczublewski, her "direct supervisor, Frank Kirchner ("Kirchner"), repeated this directive to [her]." (*Id.*). Like Mercier, Szczublewski makes generalized claims about directives given by unspecified "management officials" to her and to other unidentified Implementation Coordinators.

Both allege that their heavy workloads required them to work more than 40 hours per week to complete their tasks, and that all Implementation Coordinators performed similar duties. However, Mercier indicates that he and other Implementation Coordinators "were tasked with providing general information to as many as ninety (90) clients at a time." (Dkt. M-16-2 at 3, ¶ 8). In contrast, Szczublewski and her colleagues "were tasked with providing general information to dozens of clients at a time." (Dkt. M-16-2 at 8, ¶ 9). Neither Mercier nor Szczublewski identified any other Implementation Coordinators or their supervisors by name, or even by work location or business unit.

Implementation Manager Sherry supervises the Rochester, New York Multi Product Service Center. (Dkt. M-27-11 at ¶ 2). According to Sherry, there are four Multi-Product Service Centers, which support Paychex's mid-market and large market clients. (*Id.*). The other service centers are located in Nashville, Tennessee; Phoenix, Arizona; and Indianapolis, Indiana. (*Id.*). A different business unit serves small market clients, and Sherry indicates that the workload and duties of employees in that business unit are different that those serving larger-market clients. (*Id.*). Each Implementation Supervisor that Sherry supervises manages between seven and eight Implementation Coordinators.

(*Id.* at ¶ 5). Implementation Supervisor Vance reports to Sherry, and supervises Implementation Coordinators based in the Rochester, New York location, regardless of whether they work in Rochester or work remotely from another location. (Dkt. M-27-6 at ¶¶ 4, 13). Kirchner, who lists his title as "Flex Forward Upgrade Supervisor," currently manages eight Flex Forward Upgrade Coordinators. (Dkt. 27-10 at ¶¶ 1, 3).

The record before the Court includes Mercier's and Szczublewski's declarations, as well as written polices and a series of declarations and documents offered by Defendant. Mercier argues that the Court should, at this stage, reject the submission of written policies to counter his claim that hourly-paid Implementation Coordinators as a group were victims of a common policy or plan that violated the law. This Court has previously stated its agreement with the numerous other district courts that have addressed this question. "The existence of a formal, written policy does not mean the FLSA was not violated in practice. To hold otherwise would allow employers to avoid FLSA liability simply by promulgating compliant handbooks and policies, regardless of their actual conduct." *Acevedo v. WorkFit Med. LLC*, No. 14-CV-06221 EAW, 2014 WL 4659366, at *5 (W.D.N.Y. Sept. 17, 2014) (collecting cases).

Defendant submitted declarations from various Implementation Coordinators who aver that they were not instructed to work off the clock and were paid for all time worked (Dkt. M-27-1 though M-27-5) and managers who attest to adhering to Paychex's written policies that prohibit off-the-clock work and require payment for all work, including overtime. (Dkt. M-27-6 through M-27-13; Dkt. M-27-15). To the extent that these declarations and polices serve simply to challenge Mercier's allegations of unpaid overtime

and his and Szczublewski's allegations about directives from Sherry, Vance, and Kirchner, the Court will not consider them.  Plaintiffs are correct that at this stage, district courts in the Second Circuit have refused to gauge the relative weight of competing declarations. *See, e.g., Heitzenrater v. Officemax, Inc.*, No. 12-CV-900S, 2014 WL 448502, at *4 (W.D.N.Y. Feb. 4, 2014) (accepting deposition testimony from plaintiffs and declarations from opt-in plaintiffs and rejecting, at the conditional certification stage, declarations from potential class members who contest plaintiffs' factual allegations).

Defendant has also put forth evidence that Szczublewski was not an Implementation Coordinator.  Szczublewski's direct supervisor, Kirchner, identified her job title as "Flex Forward Upgrade Coordinator," not Implementation Coordinator.  (Dkt. M-27-10 at ¶ 3). Both Szczublewski's and Kirchner's declarations are vague as to Szczublewski's actual job duties.  The parties mutually agreed to forgo discovery during the pendency of their motions,[3] and the only evidence before the Court as to Szczublewski's job title are these dueling declarations.  At this stage, the Court cannot resolve this factual discrepancy, and will credit, for purposes of Mercier's motion, Szczublewski's assertion that she was employed as an Implementation Coordinator.

However, Defendant's submissions go beyond simply countering specific allegations in the two factual declarations submitted in support of Mercier's motion. Mercier seeks certification of a nationwide class.  His claim that Paychex had a common

---

[3]     In both actions, the Magistrate Judge granted the parties' joint requests to delay the Federal Rule of Civil Procedure 16 conferences, effectively staying discovery pending the outcome of the pending motions.  (Dkt. E-16; Dkt. M-26).

policy or plan that violated the FLSA is based not on an expressly violative written policy or company-wide misclassification, but on verbal directives from supervisors to employees telling them not to properly record time worked. As such, information about how Implementation Coordinators are managed is relevant to the Court's inquiry here. Mercier's and Szczublewski's declarations are silent as to this issue, and in his submission in reply, Mercier has not addressed any of this specific testimony directly.[4] Instead, he argues that the Court should simply ignore it. As discussed below, the general allegations offered by Mercier are not sufficient to support conditional certification. The specific allegations tendered by Mercier do support conditional certification, albeit of a more limited scope.

Plaintiffs' burden on a conditional certification motion is "minimal." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). However, this "'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)). Both Mercier and Szczublewski generally reference unidentified coworkers and allege directives from unspecified "management officials." These generalized claims are not sufficient to support nationwide certification. *See, e.g., Khan v. Airport Mgmt. Servs.*, LLC, No. 10 Civ. 7735(NRB), 2011 WL 5597371, at *3 (S.D.N.Y.

---

[4]     Mercier identifies Vance as an Implementation Supervisor and Sherry as "the Implementation Supervisor," but is silent as to her overall function. (Dkt. M-16-2 at 5, ¶ 11). Szczublewski identifies Kirchner as her supervisor. (*Id.* at 10, ¶ 16). Both declarations described other Implementation Coordinators only in vague terms, without indicating one way or the other who managed the employees to which they referred.

Nov. 16, 2011) (declarations with "vague and conclusory" allegations and "unsupported assertions" insufficient to establish that others are similarly situated); *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011) (noting evidence that some managers flouted policy by falsely reducing hours or requiring off-the-clock work was not sufficient because "plaintiffs have not shown that such activity was widespread or common practice").

Both Mercier and Szczublewski also identify specific supervisors who allegedly gave directives not to record all time worked. At this stage, these allegations are sufficient to support a collective action, but are not sufficient to establish a nationwide class. *See Meo v. Lane Bryant, Inc.*, No. CV 18-6360 (JMA) (AKT), 2019 WL 5157024, at *9-10 (E.D.N.Y. Sept. 30, 2019) (hourly-paid store managers alleging they were required to conduct off-the-clock work established a sufficient factual nexus between themselves and other store managers in six states, but not as to all 47 states where store were located); *Nabi v. Hudson Grp. (HG) Retail, LLC*, 310 F.R.D. 119, 123-24 (S.D.N.Y. 2015) (plaintiffs did not establish that practices at their work locations were applicable to practices nationwide, thus there was "no evidence from which the Court can infer the existence of a nationwide policy"); *Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609 (ADS)(ETB), 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013) (reversing magistrate judge's conditional certification of nationwide collective action, and holding that testimony from assistant store managers in two northeastern states alleging misclassification based on actual job duties was "not sufficient to create a factual nexus between" plaintiff and other assistant store managers nationwide).

Specifically, Mercier has alleged directives by his supervisor, Vance, and by Vance's supervisor, Sherry. Sherry supervises the Rochester, New York Multi Product Service Center. (Dkt. M-27-11 at ¶ 2). As such, Mercier has sufficiently established a collective class of hourly-paid Implementation Coordinators working out of the Rochester, New York Multi Product Service Center. It is undisputed that some Implementation Coordinators work from home, or from other offices at other locations. As such, the collective class includes Implementation Coordinators assigned to the Rochester, New York Multi Product Service Center, regardless of those employees' physical work locations. As discussed below, hourly-paid Implementation Coordinators who have signed Arbitration Agreements are excluded from this class.[5] The Court's determination is without prejudice, and with opportunity to renew, if the discovery process yields evidence that would render a broader certification appropriate.

C.     **The Court will not authorize notice to those who have signed Arbitration Agreements**

Relevant to both actions, Paychex indicates that in 2018, Paychex invited all Implementation Coordinators and Implementation Program Managers to participate in its

---

[5]     For purposes of Mercier's motion, the Court credits Szczublewski's assertion (challenged by Defendant) that she is an Implementation Coordinator. Thus, the Court accepts her declaration as part of Mercier's proof that other Implementation Coordinators were subject to similar verbal directives not to record all the time that they worked. As discussed below, Szczublewski, who admits she signed an arbitration agreement, is not part of the collective class. Neither Mercier nor Szczublewski provided any additional information with respect to Szczublewski's work location, and it is not clear whether her work location is part of the Rochester, New York Multi Product Service Center. At this stage, there is not sufficient evidence to extend the collective class beyond the Rochester, New York Multi Product Service Center.

Fiscal Year 2019 Incentive Plan ("FY19 Plan") and in 2019, invited these employees to participate in its Fiscal Year 2020 Incentive Plan ("FY20 Plan"). (Dkt. E-12-2 at 1, 8; Dkt. M-28-2 at 1, 8). These incentive plans all contained clauses agreeing to arbitrate disputes, including disputes arising under the FLSA and state law, and clauses agreeing to waive the right to collective action. (Dkt. E-12-3 at 6-7; Dkt. E-12-4 at 6-7; Dkt. M-28-3 at 6-7; Dkt. M-28-5 at 6-7). According to Defendant, roughly 88% of the 112 Implementation Coordinators and Implementation Program Managers who could possibly opt in to the Errickson Action and roughly 75% of the 677 Implementation Coordinators who could possibly opt in to the Mercier Action entered into these agreements, including Szczublewski. (Dkt. E-12-2 at ¶ 23; Dkt. M-28-2 at ¶ 23). Defendant argues that potential plaintiffs who executed either the FY19 or FY20 Plans (collectively "Arbitration Agreement(s)") have waived their rights to participate in the actions and thus, the Court either lacks the authority to authorize notice to them, or alternatively, they are not similarly situated to those who did not sign such agreements.

### 1.     The Fiscal Year 2019 and Fiscal Year 2020 Incentive Plans

The FY19 Plan and the FY20 Plan contain identical clauses agreeing to arbitrate disputes, including disputes arising under the FLSA and state law, and clauses agreeing to waive the right to collective action:

**12. DISPUTE RESOLUTION AGREEMENT**

The parties agree that:

**a. Disputes to be Arbitrated.** Any dispute between you and the Company, . . . including, but not limited to, a dispute arising out of or relating to your employment with Company, or any questions or disputes regarding

the arbitrability of any matter, or involving claims [under the] . . . Fair Labor Standards Act . . . shall be resolved by arbitration. . . .

. . .

e. **Individual Claims Only.** To the extent permitted by law without impairing the enforceability of this Agreement, each party shall only submit his, her, or its own, individual claims to arbitration and will not seek to represent the interests of any other person or entity and neither party will assert class or representative claims against the other in arbitration. To the extent permitted by law without impairing the enforceability of this Agreement, the parties further agree that class action, collective action, and representative action procedures shall not be asserted or permitted in arbitration. Claims brought by the parties may not be joined or consolidated in the arbitration with claims brought by or against any other employees, unless otherwise agreed to in writing by all parties.

. . .

j. **Civil Actions; Jury Trials.** You and the Company understand that by signing this Agreement, each party gives up its right to file or join a civil action and its right to a trial by jury.

(Dkt. E-12-3 at 6-7; Dkt. E-12-4 at 6-7; Dkt. M-28-3 at 6-7; Dkt. M-28-5 at 6-7).

The agreements themselves were signed electronically, using a program called EchoSign. (Dkt. E-12-2 at 3; Dkt. M-28-2 at 3). Once someone enters the electronic document, a notification appears indicating that the employee has 60 days to sign the document. (*Id.*). Employees could "sign" the document by typing their names in the box, using a mouse or touchscreen to create a signature, or uploading an image of their signature.[6] (Dkt. E-12-2 at 5; Dkt. M-28-2 at 5).

---

[6]    Defendant spells out this signature process at length, and states that this electronic signature process complies with New York law. (Dkt. E-12-5 at 8; Dkt. E-12-2 at ¶¶ 5-18; Dkt. M-28-2 at ¶¶ 5-18; Dkt. M-28-7 at 12).  Plaintiffs do not dispute this assertion.

## 2. The impact of executed Arbitration Agreements on conditional class certification

Paychex argues that potential opt-in plaintiffs who signed Arbitration Agreements are not similarly situated to Plaintiffs in either action. Paychex also argues, based on recent decisions in the Fifth and Seventh Circuits, that because those who executed valid Arbitration Agreements cannot ultimately participate in either action, authorizing notice to those potential opt-in plaintiffs exceeds the Court's authority to direct the issuance of collective notice for case management purposes. Plaintiffs generally dispute the validity of the Arbitration Agreements, because at this stage of the proceedings Paychex has only provided declaration testimony as to the number of individuals who have signed Arbitration Agreements and has not yet produced the agreements themselves (with the exception of the agreement signed by Szczublewski). Regardless, Plaintiffs argue, the existence of Arbitration Agreements should not impact conditional certification and the resulting notice issued to potential opt-in plaintiffs. Plaintiffs assert that if any opt-in plaintiffs are party to an Arbitration Agreement, the legal implications of that agreement should then be addressed on a plaintiff-by-plaintiff basis during the decertification phase.

Relevant to the Errickson action, Paychex claims that 112 of the 127 salaried Implementation Coordinators and Implementation Project Managers signed the FY19 Incentive Plan. (Dkt. E-12-2 at ¶ 23). Relevant to the Mercier action, approximately 505 out of 677 Implementation Coordinators signed the FY19 Incentive Plan, including Szczublewski. (Dkt. M-28-2 at ¶¶ 23-24).

In their written submissions and during oral argument on the pending motions, Plaintiffs made several arguments and representations that are relevant to whether those who signed Arbitration Agreements are similarly situated to those who have not, and to the question of the Court's authority to issue notice to those who have signed such agreements.

Plaintiffs assert that each potential collective action member who signed an Arbitration Agreement must be given notice of these actions so they are afforded the "right to challenge the arbitrability of their claims." (Dkt. E-14 at 5). Plaintiffs also contend, in response to Paychex's motions for partial summary judgment, that each potential opt-in plaintiff who signed an Arbitration Agreement must be given an opportunity to raise their own defenses to that contract. (Dkt. E-18). For some potential plaintiffs, the question of whether they should "bind [themselves] to arbitration, or forfeit [their] ability to earn extra wages . . . represents significant unequal bargaining power between Defendant and the non-party employees, leading to unconscionability." (Dkt. E-18 at 9). Put differently, Plaintiffs in effect argue that each potential opt-in plaintiff may have different defenses to the Arbitration Agreement.

Neither party disputes that the Supreme Court has soundly resolved the question of the enforceability of arbitration agreements waiving the right to collective action executed in the employment context. *See Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612 (2018). Such agreements, "as written," are enforceable under the Federal Arbitration Act ("FAA"), including those that require employees to individually arbitrate claims brought under the FLSA. *Id.* at 1632, 1626.

Instead, Plaintiffs argue that each potential plaintiff should be allowed to opt in to the appropriate action, regardless of whether they executed an Arbitration Agreement. Plaintiffs' counsel explained during oral argument that once Paychex established the existence of valid Arbitration Agreements for those who chose to opt-in, then those individuals would be bound by those agreements, their claim should be stayed, and arbitration compelled as to each. Notwithstanding the stayed claims, the claims of the remaining opt-in plaintiffs who did not execute Arbitration Agreements would presumably proceed collectively before this Court.

> **a.** **At this stage in the proceedings, those who executed either the FY19 or FY20 Arbitration Agreements are not similarly situated to those who did not**

In determining whether a plaintiff has met the burden of establishing that the proposed members of a putative collective action are similarly situated, district courts in this Circuit generally consider the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 693 (N.D.N.Y. 2015) (quotations omitted); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007), *order clarified*, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008).

With respect to those who signed Arbitration Agreements, Paychex's defenses will be similar—moving to dismiss those claims based on the execution of valid Arbitration

Agreements. However, Plaintiffs have made clear that opt-in plaintiffs may have individualized defenses to the execution of the FY19 or FY20 Plan. From a procedural perspective, it is apparent that Defendant will seek to dismiss (or compel arbitration) of each of these claims. Plaintiffs believe that the claims of these opt-in plaintiffs should be stayed before this Court during the course of the arbitration proceedings, while presumably the claims of the other collective class members will proceed. The attendant procedural and legal issues unique to those who have signed Arbitration Agreements militate against finding that this group of employees is similarly situated to Mercier or the Errickson Plaintiffs. *See Morangelli v. Chemed Corp.*, No. 10 Civ. 0876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010) (holding it would be a "disservice to judicial efficiency" to include those who signed arbitration agreement in collective, when they would be "subject to additional, prolonging motion practice which will likely disqualify them from the class"). Indeed, it appears that Plaintiffs' counsel seeks to include those who have signed Arbitration Agreements as part of the class not because of similarity to those with judicially-cognizable claims that can be pursued now, but rather as an efficient means to use the Court's notice to recruit clients who can pursue individual arbitration proceedings in accordance with the Arbitration Agreements. These individuals are not similarly situated and, therefore, the Court declines to include them as part of the class.

> **b.    The Court's authority to issue collective notice to individuals who have signed Arbitration Agreements**

Relying on recent decisions from the Fifth and Seventh Circuits, Defendant argues that the Court lacks the authority to issue collective notice to individuals who have signed

Arbitration Agreements. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019). In both *JP Morgan* and *Bigger*, the district courts conditionally certified FLSA collective actions with potential members that included individuals who had signed arbitration agreements waiving their rights to collective action. Both defendants then sought review from the applicable Courts of Appeals. [7]

The Fifth Circuit criticized the practice of deferring determinations regarding arbitration agreements until the decertification stage. In *Hoffmann-La Roche*, the Supreme Court held that "district courts have discretion, in appropriate cases, to implement [Section 216(b) of the FLSA] by facilitating notice to potential plaintiffs." *Hoffmann-La Roche*, 493 U.S. at 169. The Supreme Court did "not define the 'potential plaintiffs' whom a district court may notify about a pending FLSA action." *JP Morgan*, 916 F.3d at 502. Thus, the court read *Hoffmann-La Roche* as limiting a district court's ability to order notice to those bound by an arbitration agreement:

> [D]istrict courts do not "have unbridled discretion" to send notice to potential opt-in plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 174. Instead, the purpose of giving discretion to facilitate notice is because of the need for "efficient resolution in one proceeding of common issues." *Id.* at 170, 172-73. Notifying [employees who have signed arbitration agreements] reaches into disputes beyond the "one proceeding." And alerting those who cannot

---

[7] In *JP Morgan*, the district court declined to certify its decision and authorize an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). As a result, defendant JP Morgan sought a writ of mandamus from the Fifth Circuit. The court denied the writ, but issued its opinion under its "supervisory authority to correct errant caselaw from district courts under our jurisdiction." *JP Morgan*, 916 F.3d at 504. In contrast, Facebook was granted an interlocutory appeal, and the Seventh Circuit reversed the district court's determination. *Bigger*, 947 F.3d at 1048.

ultimately participate in the collective "merely stirs up litigation," which is what *Hoffmann-La Roche* flatly proscribes. *Id.* at 174.

*Id.*

The court outlined a procedure for addressing potential plaintiffs who are party to arbitration agreements that waive the right to collective action. First, the district court should determine whether a valid arbitration agreement exists. *Id.* If there exists "a genuine dispute as to the existence or validity of an arbitration agreement," the employer has the "burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that particular employee." *Id.* at 502-03. The district court should allow for the "submission of additional evidence, carefully limited to the disputed facts, at the conditional-certification stage." *Id.* at 503. Ultimately, if the evidence establishes "that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification." *Id.*

In *Bigger*, the plaintiff sought to conditionally certify a collective comprised of all Client Solutions Managers. 947 F.3d at 1048. Facebook contested issuing notice to this collective, because "most" of the proposed class signed arbitration agreements that would render them ineligible to opt in to the action. *Id.* Like Plaintiffs here, plaintiff Bigger asserted that she and the proposed class were all "victims of a common policy or plan that violated the law." *Id.* at 1049 (quoting *Myers*, 624 F.3d at 555). Also like Plaintiffs here, she argued that after notice issued, "the district court [could] determine later, after more discovery, whether anyone who opts in is not 'similarly situated' to [her]." *Id.*

The Seventh Circuit court considered the "twin goals of collective actions," the enforcement of the FLSA and the efficient resolution of disputes, and the risk that "notice giving, in certain circumstances, may become indistinguishable from the solicitation of claims – which is a process 'distinguishable in form and function' from court intervention in the notice process for case management purposes." *Id.* (quoting *Hoffmann–La Roche*, 493 U.S. at 174). As such, in exercising discretion to oversee notice to potential opt-in plaintiffs, courts must avoid "even the appearance of endorsing the action's merits." *Id.* (citing *Hoffmann–La Roche*, 493 U.S. at 174). Ultimately, the court determined that trial courts "must take specific steps" when a defendant contests the issuance of notice to those who have entered into valid arbitration agreements:

> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.
>
> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.
>
> But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged "arbitration employees"—the court must permit the parties to submit additional evidence on the agreements' existence and validity. The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice. *Cf. In re JPMorgan Chase & Co.*, 916 F.3d at 502–03. The court may not authorize notice to any employee whom the employer shows entered a valid arbitration agreement, unless the record reveals that nothing in the agreement would prohibit that employee from participating in the action. *See id.* at 501.

*Id.* at 1050.

During oral argument on the pending motions, the Court discussed with the parties whether limited discovery with respect to the Arbitration Agreements would be necessary here. Plaintiffs dispute the existence of the Arbitration Agreements, but this dispute is based on the fact that Defendant did not include as part of its submission to the Court specific evidence of each Arbitration Agreement executed. Plaintiffs expressed the view that additional discovery was not desired, arguing that Defendant did not meet its burden because it did not include these agreements as part of its motion for partial summary judgment and that the collective class should still include those who may have signed Arbitration Agreements.

Turning to the steps proscribed by the Fifth and Seventh Circuits, here Plaintiffs generally contest the validity of the Arbitration Agreements, but do not wish to engage in discovery as part of the conditional certification process. Although Plaintiffs are unwilling to engage in limited discovery prior to the Court's ruling, it does not automatically follow that in the absence of such proof, the Court will grant Plaintiffs' motions. On this record, the Court cannot definitively determine whether it is precluded from authorizing notice based on the existence of valid Arbitration Agreements. Likewise, on this record, the Court cannot conditionally certify the broad collective classes Plaintiffs seek here. In any event, the Court has already determined that those who signed Arbitration Agreements are not similarly situated to Mercier or to the Errickson Plaintiffs. Therefore, even if authorized to do so, the Court would not allow notice to be sent to those who have signed Arbitration Agreements.

### D.   The Parameters and Scope of the Plaintiffs' Proposed Notices

In both actions, Plaintiffs' counsel seeks an order:

- Requiring Defendant to provide Plaintiffs' counsel a list of all individuals who fall within the Collective Class, in an Excel spreadsheet, within 15 days of the Court's Order granting the motion. Plaintiffs seek the following information: home address, email address, phone number, employment start date and end date, location of employment, and date of birth;

- Approving the issuance of Notice and Consent Forms in the form provided by Plaintiffs' counsel to all putative collective class members via First Class U.S. Mail and email;

- Approving a sixty (60) day opt-in period, beginning on the date Notice is sent;

- Requiring Defendant to post the approved Notice in a conspicuous place (such as a break room, bulletin board or other such location) at all of Defendant's locations within five (5) days of the Court's Order granting this Motion, for the duration of the opt-in period;

- Allowing Plaintiffs' Counsel to send a Reminder Notice in the form provided by Plaintiffs' counsel halfway through the notice period to all putative members of the Collective Class who did not respond to the original notice.

Apart from Plaintiffs' request for a sixty-day opt-in period and a reminder notice, Defendant challenges aspects of each of these requests.

### 1.   The timeframe for notice eligibility

In the Errickson Action, Plaintiffs seek to notice individuals who were salaried Implementation Coordinators and Implementation Project Managers at any time during the three years prior to the filing of the Complaint. Mercier similarly seeks to notice individuals who were hourly-paid Implementation Coordinators at any time during the three years prior to the filing of the initial Complaint. In both actions, citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445 (S.D.N.Y. 2011), Defendant argues that

- 26 -

any conditional certification should be limited to potential plaintiffs employed within three years of this Court's decision, as opposed to from the commencement of the actions.

In *Whitehorn*, the court addressed the plaintiff's request to equitably toll the statute of limitations for potential opt-in plaintiffs, based on defendants' alleged delay in providing information relative to potential plaintiffs. The court noted that tolling arguments were more appropriately "reserved for a future proceeding." *Whitehorn*, 767 F. Supp. 2d at 450. *Whitehorn* does not stand for the proposition advanced by Defendant. Moreover, "at the conditional certification stage, courts frequently authorize a more inclusive notice period that dates back to three years before the filing of the original complaint—despite the fact that the statute of limitations runs on the opt-in plaintiffs' individual claims until they formally consent to join the suit." *Gui Zhen Zhu v. Matsu Corp*, No. 3:18-CV-203 (CSH), 2020 WL 29835, at *10 (D. Conn. Jan. 2, 2020) (internal quotation marks omitted). Defendant can, if appropriate, challenge the timeliness of any opt-in plaintiff's claim at the decertification phase.

The Court will permit notice to those employed three years prior to the filing of the respective complaints, provided those individuals fall within the scope of the Court's rulings in sections I(B) and I(C) of this Decision and Order.

### 2.      The scope of information sought by Plaintiffs and the method of notice

Plaintiffs seek the home address, email address, phone number, employment start date and end date, location of employment, and date of birth of each member of the collective actions. Defendant agrees that Plaintiffs are entitled to employee names and last

known addresses, but argues they are not entitled to telephone numbers, locations of employment, dates of employment, and email addresses. "When a court approves notice to the putative class, discovery of the names and addresses of putative class members has consistently been granted." *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162 (N.D.N.Y. 2008) (citation omitted). With respect to other requests, "the Court must consider whether the request would violate potential plaintiffs' privacy rights." *Acevedo*, 2014 WL 4659366, at *11.

Plaintiffs have sufficiently alleged that telephone numbers, locations of employment, dates of employment, and email addresses would facilitate notice, and would not violate potential opt-in plaintiffs' privacy rights. *See, e.g., Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK)(VMS), 2015 WL 4603117, at *15 (E.D.N.Y. July 29, 2015) ("[W]ork locations and dates of employment may also assist in determining whether the potential opt-in plaintiffs are, in fact, similarly situated to Plaintiff and whether they have timely claims."); *Acevedo*, 2014 WL 4659366, at *12 (requiring disclosure of names, last known addresses, telephone numbers, email addresses, and dates and location(s) of employment, but not dates of birth or social security numbers, based on privacy concerns); *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) (same).

However, Plaintiffs have not explained why birth dates are necessary to provide notice. Instead, Plaintiffs simply suggest birth dates, along with the other information sought, is commonly disclosed in collective actions. (Dkt. E-7-1 at 9; Dkt. M-16-1 at 12). Yet the precedent cited by Plaintiffs is either silent as to the disclosure of birth dates, or in

fact draws the opposite conclusion. *See Valerio v. RNC Industries, LLC*, 314 F.R.D. 61, 75 (E.D.N.Y. 2016) (noting that "[c]ourts are reluctant . . . to authorize disclosure of private information, such as dates of birth . . . [,] in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action"); *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 482 (S.D.N.Y. 2016) (discussing requests that did not include dates of birth). Plaintiffs have not explained how this personal information is necessary to provide sufficient notice; thus, the Court will not require disclosure of potential plaintiffs' dates of birth. *See Acevedo*, 2014 WL 4659366, at *12; *Rosario*, 828 F. Supp. 2d at 522.

With respect to the method of notice, Defendant argues that only notice by U.S. Mail is appropriate; as such, the Court should not allow notice by email or by posting in the workplace. The realities of modern communication suggest that electronic notice is a helpful companion to notice by regular mail, and the Court will allow this method of notice in both actions. *See, e.g., Islam v. LX Ave. Bagels, Inc.*, No. 18 Civ. 04895 (RA)(RWL), 2019 WL 5198667, at *11 (S.D.N.Y. Sept. 30, 2019) ("Although email has some potential drawbacks in providing notice, its benefits have led courts to employ notice by email, along with other means, as a standard practice.").

Plaintiffs also seek to post notices from both actions "at all of Defendant's offices in a common, non-public area." (Dkt. E-7-1 at 10; M-16-1 at 13). As Plaintiffs' own submissions demonstrate, Implementation Coordinators and Implementation Project Managers are not congregated in central work locations, instead working in locations across the country, with some working remotely from home. Plaintiffs have not explained

how notice by email and regular mail would be insufficient at this stage, and the Court will not require posting at this juncture. *See Islam*, 2019 WL 5198667, at *11.

### 3.    Content of the notice and opt-in consent form

The parties contest the content of the notice and opt-in consent form.  Plaintiffs and Defendant have expressed a willingness to confer as to the content of the notice.  (Dkt. E-13-2 at 13; Dkt. M-27-17 at 40; Dkt. M-37 at 22).  The Court is optimistic that the parties can confer in good faith and resolve their disputes.  However, the Court will briefly address several areas specifically raised as part of the pending motions for conditional certification and Court-authorized notice.

Defendant seeks to include a statement in the notice that indicates that potential plaintiffs may be required to answer questions under oath during a deposition or at trial. Plaintiffs object to this language, suggesting that it would serve to intimidate potential plaintiffs.  Language that informs potential plaintiffs that they may need to provide testimony either during discovery or at a trial has been routinely approved in this Circuit. *See, e.g.*, *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 117 (S.D.N.Y. 2015) ("Notice should also 'advise potential plaintiffs that they may be required to provide information, appear for a deposition, or testify if they opt in.'" (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 169-70 (S.D.N.Y. 2014)); *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 255 (E.D.N.Y. 2014) (noting routine approval of "neutral and nontechnical reference to discovery obligations," which "insure[s] that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions") (quoting *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892,

2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014) and *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 317984, at *11 (E.D.N.Y. Feb. 1, 2011)). While the Court expects that the parties will confer with respect to any concerns about the specific language proposed by Defendant, in both actions the Court now resolves in the affirmative the question of whether language that indicates that potential plaintiffs may be required to answer questions under oath during a deposition or at trial may be included in the notice.

Defendant also requests that the notice contain specific information notifying those who have signed Arbitration Agreements that they cannot participate in this collective action and that any such disputes must be resolved through arbitration. Given the Court's determination regarding the scope of the collective action, Defendant's request is moot.

Defendant objects to language in the notice and the opt-in consent form that expresses urgency with respect to the statute of limitations, references tolling, and notes that the failure to join the action or start one's own lawsuit would eventually result in those claims being barred. Defendant has not articulated why it objects to this language, or cited authority that such language should be excluded. Likewise, Plaintiffs have not explained the importance of this language, other than cursorily noting, without citation to any authority, that it is "contrary to the interest of justice" to withhold this information from potential plaintiffs. (Dkt. E-14 at 8). As a result, at this juncture, the Court will not issue any determination on the appropriateness of such language.

The parties are instructed to confer and submit a joint proposed notice within thirty (30) days from the filing of this Decision and Order. If they are unable to reach an agreement, the parties may submit separate proposed notices in each action. It is the

Court's expectation that any party's claim that specific information should or should not be included should be accompanied by a submission with relevant authority for that position.

**II.**    **Defendant's Motions for Partial Summary Judgment**

Defendant separately filed motions for partial summary judgment in both actions premised on Arbitration Agreements signed by some potential collective action members. In both actions, Defendant asks the Court to determine that the arbitration provisions and collective action waivers are enforceable as a matter of law.  In the Mercier Action, Defendant also argues that Szczublewski signed an Arbitration Agreement, and thus her claims should be dismissed.

**A.**    **The Court will not determine the enforceability of the Arbitration Agreement as to non-parties**

It is not disputed that the Errickson Plaintiffs did not sign either the FY19 Plan or the FY20 Plan.  At this stage, only the claims of one signatory, Szczublewski, are before this Court.  Defendant has not filed a counterclaim seeking a declaratory judgment, and a summary judgment motion is not the vehicle to adjudicate the claims of non-parties.  There is no dispute regarding the enforceability of the Arbitration Agreements of non-parties currently pending before this Court.  For this reason, Defendant's motion for partial summary judgment in the Errickson Action is denied, as is Defendant's motion in the Mercier Action, to the extent that motion is directed to non-parties as opposed to Szczublewski.

**B.      The Arbitration Agreement signed by Szczublewski is enforceable and her claims are subject to arbitration**

Szczublewski admits that she signed the FY19 Plan on August 16, 2018. (Dkt. 38-4 at ¶ 4). However, she argues that the agreement itself has expired and, in any event, is unconscionable and thus unenforceable. As discussed below, the dispute resolution portion of the FY19 Plan remains in effect. Szczublewski executed a valid arbitration agreement, and thus is not similarly situated to Mercier. As a result, her claim is dismissed without prejudice.

**1.      The Arbitration Agreement signed by Szczublewski has not expired or been superseded**

Szczublewski signed the FY19 Plan but did not sign a FY20 Plan.[8] She argues that the FY19 Plan terminated on May 31, 2019, and therefore she is not bound by the Arbitration Agreement. Her sole basis for this argument appears to be that the language in the FY19 Plan referring to the Performance Period and Award Period define this time period as June 1, 2018 through May 31, 2019. (Dkt. 38 at 7). Plaintiff also argues that the agreement to arbitrate must expire once she is no longer entitled to consideration under the agreement. Neither of these arguments are supported by the plain language of the FY19 Plan. Paragraph 12, the "Dispute Resolution Agreement" plainly survives:

> The Plan shall be effective June 1, 2018 for Awards Earned for FY19 Fiscal Year Payment Periods, and each Fiscal Year thereafter, unless otherwise

---

[8]      Szczublewski was employed by Paychex from August 2015 through June 2019. (Dkt. M-16-2 at 7, ¶ 4). The FY20 Plan was issued in June of 2019. (Dkt. M-28-2 at ¶ 25). Szczublewski's discussion of the FY20 Plan is sparse at best, and it is not clear whether the FY20 Plan was ever presented to her. In any event, this is not relevant to the Court's determination.

> terminated or modified, in whole or in part, [in] accordance with Paragraph 10 below. Notwithstanding the foregoing, the parties intend paragraph 12 to remain in full force and effect regardless of Plan terminations or modifications made pursuant to Paragraph 10.

(Dkt. M-28-4 at 2).

Szczublewski also argues that the FY19 Plan was superseded by the FY20 Plan, based on language in the FY20 Plan indicating that the new agreement replaces the FY19 Plan. (Dkt. 38 at 7). Thus, according to Szczublewski, even though she did not sign the FY20 Plan, the very existence of the FY20 Plan releases her from her obligations under the FY19 Plan. Paragraph 10 expressly holds that the Dispute Resolution Agreement (Paragraph 12) survives amendments or terminations the Plan:

> The Company may prospectively amend or terminate the Plan in whole or in part, at any time, upon written notice. . . . Notwithstanding the foregoing, the parties intend for Paragraph 12 to survive the amendment or termination of the Plan. Paragraph 12 may only be amended or terminated by express written agreement of the parties to amend or terminate the provisions of that paragraph and its subparts.

(Dkt. 28-4 at 6).

Based on the plain language of the agreement, the arbitration provisions set forth in the FY19 Plan were not vitiated as to Szczublewski by the issuance of the FY20 Plan, or because she was no longer entitled to compensation under the terms of the FY19 Plan.

## 2.    The FY19 Plan as to Szczublewski is enforceable

The FAA "places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (citations omitted). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress,

or unconscionability.'" *Id.* at 68 (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Parties can also agree to delegate to the arbitrator "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. The FY19 Plan signed by Szczublewski includes among the disputes to be arbitrated "[a]ny dispute between you and the Company, . . . including, but not limited to . . . disputes regarding the arbitrability of any matter. . . ." (Dkt. M-28-4 at 6).

Szczublewski argues that the FY19 Plan should be voided as unconscionable. Defendant disputes this and also argues that the issue of unconscionability should be submitted to the arbitrator, based on the terms of the agreement.

Under Section 2 of the FAA, the Court must enforce the parties' choice to delegate to an arbitrator the question of arbitrability "unless the party challenging arbitration challenges the delegation provision specifically." *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 195 (E.D.N.Y. 2019) (citing *Rent-A-Center*, 561 U.S. at 72). Here Szczublewski challenges the FY19 Plan generally. Szczublewski's responding papers contain no discussion of the delegation provision, and Defendant raised the delegation provision only on reply. Based on this record, the Court will not rule on the implications of the delegation clause. In any event, as discussed below, Szczublewski has not established that the FY19 Plan is unconscionable as to her.

Szczublewski relies exclusively on Judge Scheindlin's decision in *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002). Although Szczublewski attempts to

analogize her situation to the plaintiff in *Brennan*, it is readily apparent that her circumstances in no way approach the significant issues raised by the *Brennan* court.

Brennan complained of sexual harassment in the workplace. While her complaints were still pending, she was required to attend a sexual harassment training session with other employees. *Brennan*, 198 F. Supp. 2d at 379. At the end of the training video, that same attorney who was investigating her claim circulated "a sixteen-page, single spaced document," which contained provisions requiring the arbitration of employee claims. *Id.* at 379. The attorney explained only that the document "contained internal procedures for filing complaints." *Id.* at 380. Employees were told that if they did not sign the document, they would not be eligible for promotions. *Id.* After briefly leaving the room, the attorney then collected the documents from the employees, verifying that each agreement was signed. *Id.* The court found that Brennan "reasonably believed that her failure to sign would lead to her termination." *Id.* at 380. Fifteen months later, Brennan resigned, alleging discrimination and harassment, and filed a complaint with the Equal Employment Opportunity Commission. *Id.*

When Brennan eventually filed suit, the defendant sought to enforce the arbitration provision. *Id.* The court found that the agreement was unconscionable, and thus unenforceable.[9] "In New York, unconscionability generally requires both procedural and

---

[9]    In an earlier motion, defendant Bally Total Fitness originally moved to dismiss Brennan's complaint, citing the arbitration agreement. *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408 (S.D.N.Y. 2001). "[A] challenge to the making of a contract generally, as opposed to the making of an arbitration provision specifically, must be decided by the arbitrator." *Id.* at 414 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.

substantive elements." *Id.* at 382 (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)).  The agreement was procedurally unconscionable because when she entered into it, Brennan lacked "meaningful choice."  *Id.*  The circumstances surrounding the issuance and execution of the agreement caused Brennan, a single mother who was at the time pregnant with twins, to fear the loss of her job and her health insurance if she did not sign it.  *Id.*  Likewise, the agreement was substantively unconscionable, because it could unilaterally be modified by defendant, and importantly, by its terms denied her right to seek judicial redress for a claim that was already pending.  *Id.* at 384.

Szczublewski argues that her situation mirrors the *Brennan* plaintiff's, because: (1) there is an inherent disparity in bargaining power between employer and employee; (2) she was not given adequate time to review the document; (3) she was not informed of the right to review the agreement with an attorney; and (4) she would not receive a bonus if she did not sign the agreement.  (Dkt. M-38 at 6-7).

*Brennan* plainly does not stand for the proposition that an agreement between an employer and employee must, *ipso facto*, create an unequal bargaining position such that an arbitration agreement must be rejected.  Here, Szczublewski alleges no circumstances impacting the bargaining relationship other than that she was an employee.  *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) ("'[M]ere inequality

---

395, 402 (1967)).  Because the contract at issue was solely an agreement to arbitrate, the court elected to consider the enforceability of the agreement, noting that "an independent challenge aimed directly at the arbitration agreement itself and not the contract as a whole does fall within a district court's jurisdiction."  *Id.* (citing *Prima Paint*, 388 U.S. at 402).  The court thus denied defendant's motion to dismiss and ordered limited discovery on unconscionability.  *Id.* at 416.

in bargaining power' between employers and employees is not alone sufficient to hold arbitration agreements unenforceable.") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)).

Assuming that Szczublewski was in fact told that she should execute the agreement by the end of the day she received it, or by the end of the following day, even this circumstance in no way mirrors Brennan's experience. In *Brennan*, employees were given roughly fifteen minutes to review the agreement, and then required to turn over the documents, which were inspected as they left the room.

Likewise, the fact that Szczublewski was not expressly told that she could consult with counsel does not suggest that the agreement was unconscionable. The agreement discussed in *Brennan* was presented by an attorney and the agreement itself affected the plaintiff's rights to litigate a claim of which the employer—and indeed the very in-house attorney presenting the agreement—was already aware. Szczublewski makes no such allegation here.[10]

Szczublewski also suggests that she should have been advised to consult with counsel because the arbitration provisions were "buried" in the agreement. (Dkt. M-38 at 10). Contrary to this claim, the agreement she signed clearly noted, in capital letters and a

---

[10]   The facts alleged by Szczublewski are likewise inapposite to Judge Woods' recent decision declining to enforce arbitration agreements circulated to potential collective action members after plaintiffs' motion for conditional certification was filed, but before the court granted the motion. *O'Conner v. Agilant Solutions, Inc.*, No. 1:18-CV-6937-GHW, 2020 WL 1233749 (S.D.N.Y. Mar. 12, 2020) (exercising its supervisory authority over collective action, court declines to enforce arbitration agreement where evidence showed that agreement, circulated to putative class during pendency of conditional certification motion, was an attempt to foreclose potential plaintiffs from participating in the litigation).

bold font, the section entitled "**12. DISPUTE RESOLUTION AGREEMENT**," with subheadings also in a bold font, including "**Disputes to be Arbitrated**," "**Individual Claims Only**," and "**Civil Actions; Jury Trials**." (Dkt. 28-4 at 6-7). Indeed, the second paragraph of the agreement, which identified the plan's objectives, included the specific objective of "provid[ing] for an efficient and effective dispute resolution mechanism for most legal claims." (*Id.* at 2).

Finally, the fact that the agreement was itself the mechanism by which employees could participate in a bonus program does not make the agreement unconscionable. In *Brennan*, employees were told they were not eligible for promotion unless they signed the agreement. Yet the court specifically found that this fact was not determinative, noting that "continued employment and promotion constitute valid consideration for agreeing to alternate dispute resolution." *Brennan*, 198 F. Supp. 2d at 383 n. 8. The Court's holding in *Brennan* was instead based on the totality of the circumstances established by the plaintiff: The attorney's "threat [regarding promotions] contributed to the coercive atmosphere and, taken with other factors, leads to the conclusion that Brennan lacked a meaningful choice in deciding whether to sign the Agreement." *Id.*

Szczublewski has not raised any issue of material fact as to whether the FY19 Plan (or the arbitration clause contained therein) was unconscionable.

### 3.    Szczublewski's claim is dismissed without prejudice

Defendant has moved for summary judgment, based solely on the argument that the Arbitration Agreement precludes Szczublewski from resolving her claims outside of arbitration. Defendant does not style its motion as one to compel arbitration. During oral

argument on the pending motions, Defendant's counsel indicated that Paychex was "agnostic" on the question of whether Szczublewski pursued her claim by seeking arbitration. As such, Defendant is apparently not seeking to compel Szczublewski to arbitrate, but instead ensuring that *if* she chooses to pursue her claim, she must do so pursuant to the arbitration provisions in the FY19 Plan, instead of in the courts.

Szczublewski argues that regardless of how Defendant couches its motion, it is seeking to compel arbitration. As such, Szczublewski asks that the Court stay the action as to her while her claim proceeds to arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

Here the Court has specifically determined that Szczublewski executed a valid Arbitration Agreement. As detailed above, the Court has determined that those who executed valid Arbitration Agreements are not similarly situated to Mercier. Having specifically determined that Szczublewski is not similarly situated to Mercier, her claim is dismissed without prejudice. Defendant's motion for partial summary judgment as to Szczublewski is denied as moot.

## CONCLUSION

For the forgoing reasons, the Errickson Plaintiffs' motion for conditional certification (Dkt. E-7) is granted in part. The Court conditionally certifies a collective action class of salaried Implementation Coordinators and Implementation Project Managers who have not entered into Arbitration Agreements. Within twenty-one (21) days

of filing of the Court's Decision and Order, Defendant is ordered to provide Plaintiffs' counsel an Excel spreadsheet with a list of current and former salaried Implementation Coordinators or Implementation Project Managers employed within three years of the filing of the Complaint in the Errickson Action who have not signed Arbitration Agreements, including those individuals' titles, names, addresses, telephone numbers, email addresses, and dates and location(s) of employment. The Errickson Plaintiffs will be permitted to send notice to those individuals by mail and email. The parties are instructed to meet and confer regarding the proposed Court-authorized notice and opt-in consent form and to submit a jointly proposed notice and form within thirty (30) days from the filing of this Decision and Order. If the parties are unable to agree, they may submit separate proposed notices and forms. Paychex's motion for partial summary judgment (Dkt. E-12) is denied.

Mercier's motion for conditional certification (Dkt. M-16) is granted in part. The Court conditionally certifies a collective action class of hourly-paid Implementation Coordinators who have not entered into Arbitration Agreements and who work or worked out of the Rochester, New York Multi Product Service Center. Within twenty-one (21) days of filing of the Court's Decision and Order, Defendant is ordered to provide Plaintiffs' counsel an Excel spreadsheet with a list of current and former hourly-paid Implementation Coordinators who work or worked out of the Rochester, New York Multi Product Service Center within three years of the filing of the Complaint in the Mercier Action who have not signed Arbitration Agreements, including those individuals' titles, names, addresses, telephone numbers, email addresses, and dates and location(s) of employment. Mercier

will be permitted to send notice to those individuals by mail and email. The parties are instructed to meet and confer regarding the proposed Court-authorized notice and opt-in consent form and to submit a jointly proposed notice and form within thirty (30) days from the filing of this Decision and Order. If the parties are unable to agree, they may submit separate proposed notices and forms. Szczublewski is not similarly situated to Mercier, and her claim is dismissed without prejudice. Paychex's motion for partial summary judgment (Dkt. M-28) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:       March 19, 2020
             Rochester, New York