UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JENNIFER ERRICKSON, MARK TROVATO, LINDSAY DUBOIS AND DIANA GORDON**<br><br>        Plaintiffs,<br><br>v.<br><br>**PAYCHEX, INC.**<br><br>        Defendant. | Civil Action No: 6:19-cv-06347 |

## UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Plaintiffs Jennifer Errickson, Mark Trovato, Lindsay DuBois and Diana Gordon respectfully ask this Honorable Court for review and approval of the Settlement Agreement between Plaintiffs and Defendant (collectively, the Parties).

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 2019, named Plaintiffs Jennifer Errickson and Mark Trovato, on behalf of themselves and others similarly situated, filed suit against Defendant Paychex, Inc. ("Defendant" or "Paychex") for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the New York Minimum Wage Act, Labor Law § 650, *et seq.* and the New York Wage Payment Act, Labor Law § 190, *et seq.* (collectively, the "NYLL"). [ECF No. 1]. Defendant filed its Answer on June 28, 2019. [ECF No. 9].

On June 25, 2019, Plaintiffs filed their Motion for Conditional Certification under the FLSA. [ECF No. 7]. Defendant filed its Opposition to Plaintiffs' Motion for Conditional Certification [ECF No. 13] on July 10, 2019, the same day that it filed a Motion for Summary Judgment [ECF No. 12]. In the Motion for Summary Judgment, Defendant argued that although

the two Plaintiffs did not sign arbitration agreements, "nearly all" of the putative collective action members signed arbitration agreements, and therefore requested the Court hold those arbitration agreements valid and enforceable. [ECF No. 12-5]. Defendant argued in its Opposition to Plaintiffs' Motion for Conditional Certification that those who signed the arbitration agreements were not "similarly situated" and thus should be excluded from the conditional class definition. [ECF No. 13-2].

A hearing was held on January 31, 2020 on both the Plaintiffs' Motion to Certify the Class Conditionally and Defendant's Motion for Summary Judgment. [ECF No. 27]. On March 19, 2020, Judge Wolford granted Plaintiffs' Motion for Conditional Certification in part, allowing Plaintiffs to send notice to similarly situated individuals who did not sign arbitration agreements. [ECF No. 28]. Judge Wolford also denied Paychex's motion for partial summary judgment, refusing to determine the enforceability of arbitration agreements as to non-parties. *Id.*

After the Court granted conditional certification and notice was sent to similarly situated individuals, Lindsay DuBois and Diana Gordon opted in to the action. [ECF Nos. 32, 33]. On October 22, 2020, Plaintiffs Errickson and Trovato filed a Motion for Leave to File Amended Complaint to add Plaintiffs DuBois and Gordon and their related state law claims. [ECF No. 42]. The Court granted this Motion on October 23, 2020 and the Amended Complaint was filed on that day. [ECF Nos. 43, 44].

Pursuant to the Scheduling Order [ECF No. 41], the Parties participated in a mediation session before Fernando Santiago on December 9, 2020. The settlement negotiations resulted in the attached Settlement Agreement. Exhibit 1. As part of the Settlement Agreement, Plaintiffs have agreed that both the FLSA and related state law claims against Paychex should be dismissed with prejudice. The Parties now seek the Court's approval.

## II. LEGAL STANDARD

The Second Circuit determined that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). As a result, courts in this Circuit must review FLSA settlements for fairness before approving any stipulated dismissal. *See id.*; *Fisher v. SD Protection Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020). "The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought by an employer's overreaching." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted). To determine fairness, under what is frequently referred to as the *Cheeks* analysis, courts should consider the totality of the circumstances and often refer to the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Id.* (citations omitted). *See also Cardenas v. A.J. Piedimonte Agricultural Development, LLC,* No. 18-cv-881, 2020 WL 3469681, at *2 (W.D.N.Y. June 25, 2020) (acknowledging the *Wolinsky* factors); *Fisher*, 948 F.3d at 600 (same). "There is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Cabrera v. CBS Corp.*, No. 17-cv-6011, 2019 WL 502131, at *5 (S.D.N.Y. Feb. 8, 2019). *See also Cardenas*, 2020 WL 3469681, at *2.

In addition, district courts will also evaluate the reasonableness of the fees and costs. *Fisher*, 948 F.3d at 600; 29 U.S.C. § 216(b) ("The Court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant,

and costs of the action." (emphasis added)). The Second Circuit requires counsel to submit evidence providing a factual basis for the proposed attorneys' fees. *Wolinsky*, 900 F. Supp. 2d at 336. There is a "strong presumption that the 'lodestar' amount—that is, the number of attorney hours reasonably expended times a reasonable hourly rate—represents a reasonable fee. . ." *Id.* Ultimately, the courts must "ensure that the interest of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients." *Id.* (internal citations omitted).

## III. ARGUMENT

### A. The Settlement Reflects a Fair and Reasonable Compromise of Disputed Issues

The Settlement Agreement Meets the Fairness Standard. This is made clear from a review of the *Cheeks* analysis.

1. A Review of Plaintiffs' Range of Recovery Demonstrates that the Settlement is Fair

As is evidenced by the executed Settlement Agreement, all Plaintiffs have affirmatively assented to this settlement. *See* Exhibit 1. Therefore, it is not necessary for the Court to engage in a two-tiered procedure where the Parties must gain preliminary approval from the Court, send notice, and then file a motion for final approval. *See Marichal v. Attending Home Care Services, LLC*, 432 F. Supp. 3d 271, 279-80 (E.D. N.Y. Jan. 13, 2020). *See also Cardenas*, 2020 WL 3469681, at *2-3. As a result, the Court must engage in the *Cheeks* review for fairness at this time.

An analysis of the *Cheeks* factors demonstrates that this settlement meets the fairness standard. First, the settlement amount is easily within the range of possible recovery. "To indicate the range of recovery, a plaintiff must at least indicate each party's estimate of the number of hours worked or the applicable wage. . . There are various methods to proffer such facts: by indicating what was alleged in the Complaint or the evidence shown through discovery, among others."

*Marichal*, 432 F. Supp. 3d at 283 (internal citations omitted). The total settlement amount falls in between Plaintiffs' and Defendant's opening damage computations, with each party maintaining that possible recovery would be significantly greater or less than the settlement amount if a compromise was not reached.

In exchange for Plaintiffs' stipulation to dismiss their claims against Paychex with prejudice, Paychex has agreed to pay Plaintiffs a total sum of $121,000.00, minus $704.65 in costs and $50,295.35 in attorneys' fees. Information regarding attorneys' fees and costs are described infra Section II.C.

Specifically, Plaintiffs' damage calculations accurately take into account each Plaintiff's potential total recovery based on their hours worked and weeks worked. *See* Exhibit 2. The damage calculations also include any state wage and hour laws allegedly violated while employed by Defendant.

Throughout her employment, Plaintiff Errickson received an annual salary of approximately $62,5000.00. Amended Complaint [ECF No. 44] ¶ 53 ("Compl."); Answer to Amended Complaint ("Answer") ¶ 53 (admitting allegation in the Complaint). Errickson estimated that she consistently worked 50 to 100 hours each week. Errickson Decl. [ECF No. 7-2 ¶ 27]. Her recovery is based on employment dates ranging from October 1, 2016 to July 14, 2017. Compl. ¶ 10; Answer ¶ 10 (admitting approximate employment dates). This totals 41weeks worked. At the settlement conference, with the input of Plaintiff Errickson, the Parties negotiated a settlement figure that was based on her working an average of 68.5 hours per week. Based on this average, combined with a $62,500 salary and 41 weeks worked, Plaintiff Errickson is owed a total of $10,259.43. *See* Exhibit 2. With liquidated damages, Plaintiff Errickson's recovery would be $20,518.86, which led to a final negotiated settlement figure of $20,000.00.

5

Plaintiff Trovato's annual salary was approximately $45,000.00. Trovato Decl. [ECF No. 7-2 at ¶ 6]; Compl. ¶ 54; Answer ¶ 54 (admitting allegation in the Complaint). Plaintiff Trovato worked from approximately March 1, 2016 to April 1, 2017. Compl. ¶ 14; Answer ¶ 14 (admitting approximate employment dates). Although the FLSA's prevents employees from recovering wages past 3 years, the New York Labor Law allows for a six-year statutory recovery period. Therefore, all of Plaintiff Trovato's work falls within the statutory period. Considering a start date of March 1, 2016 and end date of April 1, 2017, that is approximately 57 weeks within the statutory time period. At the settlement conference, with the input of Plaintiff Trovato, the Parties negotiated a settlement figure that was based on him working an average of 68.5 hours per week. Based on this average, combined with his salary and dates of employment, Plaintiff Trovato is owed $10,266.84 in wages. Exhibit 2. With liquidated damages, Plaintiff Trovato is owed a total of $20,533.68, which led to a final negotiated settlement figure of $20,000.00.

Plaintiff DuBois worked for Defendant from approximately March 1, 2016 to November 1, 2017. Answer ¶ 22. Ms. DuBois did not opt in to the litigation until June 18, 2020. [ECF No. 32]. Although the FLSA only provides for a maximum of a three-year statute of limitations, Plaintiff DuBois worked in California, which allows recovery for the previous four years. *See* Compl. Count VI; California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*; Cal. Lab. Code §§ 201-2013, 226, 510, 1194 and 1198. Therefore, Ms. DuBois worked for 72 weeks within the statutory time period of June 18, 2016 (four years prior to her opt-in date) and November 1, 2017. The Amended Complaint alleged that Plaintiff DuBois worked 50 to 60 hours per week. Compl. ¶ 61. At the settlement conference, with the input of Plaintiff DuBois, the Parties negotiated a settlement figure that was based on her consistently working 48.5 hours each week for 72 weeks at a salary of approximately $65,000.00, leading Plaintiff Dubois to be owed

$7,889.04 in wages. Exhibit 2. With liquidated damages, Plaintiff Dubois is owed a total of $15,778.08, which led to a final negotiated settlement for the sum of $15,000.00.

Plaintiff Gordon worked as an Implementation Project Manager from approximately December 1, 2015 to October 20, 2017.[1] Answer ¶ 18. However, because Ms. Gordon did not opt in until June 25, 2020, her statute of limitations prevented her from going back further than June 25, 2017. *See* [ECF No. 33]. This presumes a three-year statute of limitations under the FLSA, and means that Ms. Gordon only had 17 recoverable weeks worked in the statutory timeframe. In addition, Ms. Gordon is entitled to a statutory penalty under Ohio law. Pursuant to the Ohio Revised Code § 4113.15, Plaintiff Gordon is entitled to the greater of $200.00 or 6% of her unpaid wages. Per the Amended Complaint, Plaintiff Gordon worked approximately 50 to 60 hours per week. [Compl. ¶ 61]. At the settlement conference, with the input of Plaintiff Gordon, the Parties negotiated a settlement figure that was based on her working an average of 52 hours per week. Based on working a total of 17 weeks at a salary of approximately $75,000.00, Plaintiff Gordon is owed $2,829.48 in wages. Exhibit 2. With liquidated damages, plus the $200.00 Ohio statutory penalty, Plaintiff Gordon is owed $5,858.96, which led to a final negotiated settlement figure of $5,000.00.

The Settlement Agreement also provides for service awards to named Plaintiffs Errickson and Trovato in the amount of $5,000.00 each to acknowledge their service to the collective action. It is standard for plaintiffs who undertake additional time, efforts, and risks to advance litigation to receive incentive awards in employment litigation. *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 422 (S.D.N.Y. 2014). This includes FLSA collective actions. *See Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 850 (D.S.C. 2016) (citations omitted).

---

[1] Although Ms. Gordon was technically employed with Paychex until June 22, 2018, she was on medical leave beginning October 20, 2017. Answer ¶ 18.

Named plaintiffs in collective action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against their former employers. *See Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-cv-7539, 2020 WL 5995978, at *8 (E.D.N.Y. Apr. 21, 2020); *Beesley v. Int'l Paper Co.*, No. 6-cv-703, 2014 WL 375432 at *4 (S.D. Ill. Jan. 31, 2014).

Plaintiffs Errickson and Trovato pursued these claims on behalf of the class, providing factual information and otherwise assisting Plaintiffs' Counsel with the prosecution of this litigation. They have been instrumental to this litigation from the very outset. They have provided detailed factual information regarding their employment and the employment conditions specific to members of the collective class. *See Romero*, 58 F. Supp. 3d at 422. The named Plaintiffs also submitted declarations and were heavily involved in the discovery process, which included answering interrogatories, submitting documents and working closely with Counsel for purposes of developing the interrogatories and document requests that were propounded on Defendant. They also attended an all-day mediation conference on behalf of the FLSA collective. Their participation was instrumental to bringing this matter to a final close. Such participation warrants incentive award payments. *DeWitt v. Darlington Cty., S.C.*, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013).

Moreover, in agreeing to file this collective action suit, Plaintiffs Errickson and Trovato took substantial risks. They assumed significant risk that "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Epenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). "The incentive award is designed to compensated [named plaintiffs] for bearing these risks." *Id.* at 877.

Although Plaintiffs Errickson and Trovato were no longer employed by Defendant when the lawsuit was commenced, they risked retaliation from future employers for the benefit of all collective and potential class members. *See Beesley*, 2014 WL 375432, at *4 (recognizing that suits against former employers carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against a prior employer); *Sewell v. Bovis Lend Lease, Inc.*, No. 9-cv-6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees.").

The incentive awards requested in this matter are at the low end from the typical range. The average amount awarded in incentive pay to class representatives is $16,000.00. *DeWitt*, 2013 WL 6408371, at *14. The proposed award amounts are less than service awards granted in other FLSA cases. *See, e.g., Wineland v. Casey Gen. Stores, Inc.*, 267 F.RD. 669. 677-78 (S.D. Iowa 2009) (approving incentive award payments of $10,000.00 per named plaintiff in FLSA case); *Hens v. Clientlogic Operating Corp.*, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (awarding $7,500.00 to each representative plaintiff in an FLSA collective action). *See also Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (incentive awards of

$15,000.00 each to three plaintiffs); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at * 9 (E.D.NY Jan 20, 2020) (awarding $15,000.00 service awards each to five named plaintiffs and $10,000.00 service awards each to ten named plaintiffs); *Toure v. Amerigroup Corp.,* 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (award of $10,000 each to both of the named plaintiffs); *Cunningham v. Suds Pizza, Inc*., 290 F.Supp.3d 214, 233-34 (W.D.N.Y. Dec. 1, 2017) (awarding $10,000.00 to one named plaintiff and $7,500.00 to two other named plaintiffs); *Hanifin v. Accurate Inventory and Calculating Service, Inc*., 2014 WL 4352060, at * 10 (N.D.N.Y. Aug. 20, 2014) (awarding $10,000.00 service award to named plaintiff). These authorities confirm that the total amount in service awards requested in this matter are more than fair.

2. <u>The Settlement Will Greatly Enable the Parties to Avoid Anticipated Burdens and Expenses in Establishing their Respective Claims and Defenses</u>

Moreover, the Settlement Agreement will enable the Parties to avoid the anticipated burdens and expenses of continuing with protracted litigation. At issue in this matter was whether Plaintiffs were exempt from the overtime requirements of the FLSA and state wage laws. The Parties in this matter dispute both liability and damages. Plaintiffs allege that Defendant violated the FLSA because it classified Implementation Coordinators and Project Managers as exempt from the FLSA, assigned a heavy workload to Plaintiffs that required them to work over forty hours a week, and refused to pay overtime wages. Defendant denies these allegations and claims that Plaintiffs were properly classified as exempt from the overtime provisions of the FLSA. If Defendant failed to prove there was an applicable exemption, Plaintiffs would have been required to present evidence of the number of hours worked for the purposes of calculating damages. Reaching a settlement allowed both Parties to avoid the additional expenses and burdens of proving their claims or defenses.

If the litigation were to continue, Plaintiffs would face many obstacles and uncertainties, including the outcome of motions for summary judgment and/or decertification, and potentially a trial. It is very likely both Parties would have filed dispositive motions, engaging in expensive and time-consuming briefing and preparing for motions hearings. Finally, preparing for and engaging in trial would have been remarkably expensive and burdensome. An additional wrinkle has resulted from the COVID-19 pandemic, which would likely delay the waiting period Plaintiffs would have to endure before they were afforded their day in court.

Furthermore, even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would need to prove the amount of damages they suffered. Plaintiffs allege that they regularly worked multiple overtime hours per week. Defendant specifically denies that they worked these hours.

3.  The Settlement Will Enable Both Parties to Avoid the Serious Risks of Litigation

In addition, from Plaintiffs' perspective, the prompt payment of wages and damages is far preferable to continued litigation. Plaintiffs believe that if their allegations were ultimately shown to have been correct, Defendant would have been faced with the prospect of a significant monetary verdict in favor of Plaintiffs, as well as the obligation to pay litigation fees and costs. However, if Defendant's arguments were correct, Plaintiffs faced the risk of a complete defense verdict and no recovery of any kind. From the Defendant's perspective, a complete and final resolution of Plaintiffs' claims is preferable to continued litigation. This case qualifies as complex, both in establishing liability and in proving damages. Many complex issues of fact and law remain unanswered and would have to be resolved at or before trial. More extensive discovery would also be necessary, which would be costly and time consuming. This is especially true when considering

11

there likely would have been dispositive motions, which undoubtedly would have been aggressively litigated by both sides.

If the Parties survived that process, any trial would be lengthy, costly and complex. Plaintiffs would need to provide evidence sufficient to establish liability and proof of damages, which likely would have involved a veritable battle on technological issues and mathematical formulas used to determine whether the amount of any hours worked performing certain job duties yielded violations of the FLSA's overtime wage requirements. Regardless of the outcome at trial, post-judgment appeals would be inevitable. This results in a very real risk that an award might be much less than the amount obtained in the settlement process. Accordingly, the complexity and prospective expense and duration of litigation weighs in favor of approving the proposed settlement.

Plaintiffs are interested in a settlement that eliminates the uncertainty of trial, expedites their receipt of funds, provides closure, and minimizes the disruption to Plaintiffs' lives caused by the requisite active participation of prosecuting this action to a trial and potentially beyond. The litigation risks posed to each Party include complete success or failure and serious potential liability for attorneys' fees and costs. Therefore, again, this settlement eliminates the possibility of a dismissal, decertification, loss at trial or loss on appeal. Consequently, this settlement brings value now, as opposed to years from now, and provides a certainty of result. The settlement benefit that Plaintiffs will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed settlement.

4. <u>The Settlement Agreement is the Product of Arm's-Length Bargaining Between Experienced Counsel</u>

In addition, since May 9, 2019, the Parties have actively litigated this action, attended pretrial conferences and hearings, engaged in exchange of discovery, resolved discovery disputes,

and attended a mediation before Fernando Santiago, Esq. [ECF No. 48]. The proposed settlement is the result of all of the work each Party has put in advancing the litigation to this stage and significant arm's-length negotiations by experienced wage and hour collective action counsel. Lead counsel for both Parties have litigated wage and hour cases for years and are familiar with the risks in this area of litigation. *See* Exhibit 3. Plaintiffs' Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and had ample evidence on which to base an informed assessment of the proposed settlement. *Id.* Based on Plaintiffs' Counsel's knowledge of the case and the applicable law, as well as their experience in similar wage and hour collective actions, Plaintiffs' Counsel believe the settlement is fair and reasonable. *Id.* Again, the settlement was the result of negotiations between experienced Counsel that included significant consultation from each Counsel's respective client(s), as well as the use of an outside mediator.

Furthermore, the Settlement Agreement entered into by Plaintiffs, represented by The Law Offices of Peter T. Nicholl, and Defendant, a sophisticated business operation represented by Nixon Peabody, LLC, is the product of extensive litigation and dispute resolution efforts made in part through this Court's mandatory mediation program. The mediation lasted for approximately six hours before the Parties were able to reach an agreement.

5. <u>There is No Fraud or Collusion</u>

Finally, none of the Plaintiffs are currently working for Defendant and the Settlement Agreement contains no indicia of fraud or collusion. Given the adversarial positions of their respective clients and the continued involvement of those clients in the process, there was no risk of collusion or fraud. Most notably, the Parties' proposed settlement does not include the types of provisions discussed in *Cheeks* that contravenes the FLSA's remedial purposes. *See Cheeks*, 796

F.3d at 206. In particular, this agreement does not contain an overbroad release, highly restrictive confidentiality provisions, or inexplicably high attorneys' fees. *Id.*

    B. **The Attorneys' Fees and Costs Contemplated in the Settlement Agreement Are Reasonable**

An award of costs includes "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Fisher*, 948 F.3d at 600 (citations omitted). Plaintiffs' expenses include the filing fee, service of process fee and the costs associated with Counsel's trip to New York for the January 31, 2020 hearing. *See* Exhibit 4. These expenses are documented in the receipts and invoices submitted by Counsel. *Id*. The submitted receipts equal Plaintiffs' requested costs of $704.65 ($400.00 (filing fee) + $145.00 (service fee) + $159.65 transportation and meal costs associated with January 31, 2020 hearing). Exhibit 4.

Furthermore, the FLSA only requires that attorneys' fees be reasonable. 29 U.S.C. § 216(b). "In determining a fee award, the typical starting point is the so-called lodestar amount, that is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Healey v. Leavitt*, 485 F.3d 63, 71 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). *See also Cardenas*, 2020 WL 3469681, at *5; *Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005); *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

Here, Plaintiffs' counsel requests $50,295.35 ($51,000.00 less the $704.65 in costs) in fees. When submitting fees for approval, the applicant "must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600. The records should indicate the attorney, the date, hours expended, and the nature of the work done. *Id.* Plaintiffs have provided itemized billing records showing Plaintiffs' Counsel's billing rate and work performed. *See* Exhibit 4. As of December 9, 2020, Plaintiffs' Counsel has expended over 355 hours investigating and subsequently litigating this matter, leading Plaintiffs' Counsel to incur

14

$86,726.25. Counsel spent time investigating the claims, preparing and filing the Complaint, obtaining FLSA conditional certification under 29 U.S.C. § 216(b), successfully defeating Defendant's Motion for Summary Judgment, serving and answering written discovery, attending the mediation, and successfully negotiating a settlement. Notably, Plaintiffs have not sought any additional attorneys' fees for the time expended after the settlement was reached on December 9, 2020. This includes the time drafting the present Motion and attached Exhibits, reviewing the Settlement Agreement, and the ongoing discussions with Plaintiffs and Defense Counsel for purpose of negotiating and finalizing all settlement terms.

Plaintiffs' Counsel's typical hourly rates range from $150.00 for paralegals, $225.00 per hour for an attorney with less than 5 years of experience, $300.00 per hour for an attorney with 5 to 8 years of experience, $350.00 per hour for an attorney with 9 to 14 years of experience, $400.00 per hour for an attorney with 15 to 19 years of experience, and $450.00 for attorneys with more than 20 years of experience. *See* Exhibit 4. However, the fees provided under the Settlement Agreement are far less than the fees incurred in this matter. Taking the negotiated $50,295.35 in attorneys' fees and 355.18 as the number of hours expended on the case yields an imputed hourly rate of $141.61. The Court should use this imputed rate when evaluating whether the hourly rate is reasonable. *See Galvez v. Americlean Services Corp.*, No.11-cv-1351, 2012 WL 2522814, at *5 (E.D. Va. June 29, 2012) (using imputed hourly rate to determine reasonableness of fees in FLSA settlement).

The requested hourly rates are consistent with those approved in other FLSA actions in this District. *See Cardenas*, 2020 WL 3469681, at *5 (finding $200.00 per hour for an attorney with seven years of experience and $300.00 per hour for an attorney with more than 15 years of experience reasonable); *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558

(W.D.N.Y. 2018) (finding $200.00 per hour a reasonable fee for attorney with seven years of experience); *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 357 (W.D.N.Y. 2012) (finding $200.00 per hour a reasonable average hourly rate in FLSA litigation); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 413 (W.D.N.Y. 2011) (finding $195.00 per hour for an associate reasonable in FLSA litigation); *Falleson v. Paul T. Freund Corp.*, 736 F. Supp. 2d 673, 676 (W.D.N.Y. 2010) (finding $215.00 per hour a reasonable average hourly rate for attorneys and paralegals in FLSA case).

Of the total settlement amount of $121,000.00, minus the $704.65 in costs, $50,295.35 in attorneys' fees will be paid to Plaintiffs' Counsel. In light of the hundreds of hours worked by Plaintiffs' Counsel on this action, the discounted fees under the Settlement Agreement, and the average hourly rates for attorneys of similar experience practicing in the Western District of New York, the amount of attorneys' fees, which comprise approximately 42% of the total settlement amount, is both fair and reasonable.

Fees need not be reduced "merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). *See also Fisher*, 948 F.3d at 603. In fact, courts have recognized that implementing a percentage cap on attorneys' fees in FLSA actions is actually contrary to the FLSA's remedial goals. This is because it could "discourage[e] plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high." *Id.* (citing *Sand v. Greenberg*, No. 08-cv-7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)). The Second Circuit explicitly recognized that "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement." *Fisher*, 948 F.3d at 603.

"Instead, as noted by the Supreme Court, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Fisher*, 948 F.3d at 606 (citing

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Just as the Second Circuit instructed in *Fisher*, this Court should take into consideration that the Plaintiffs' awards give them complete recovery in this litigation. Their recoveries are well within the range contemplated in regard to achieving success as to their overtime wage claims and statutory damages under the FLSA and related state wage laws.

Moreover, this Court should take into account that Plaintiffs' Counsel engaged in protracted litigation. Again, other than simply drafting and filing a complaint, Plaintiffs' Counsel filed and were successful on a motion for conditional certification, successfully defeated a summary judgment motion by Defendant, and participated in court conferences related to these motions. Plaintiffs' Counsel also drafted and filed an Amended Complaint so that the opt in Plaintiffs could be afforded full recovery under their state's wage laws. Plaintiffs also drafted and served discovery on Defendant, and answered all discovery requests that Defendant served on Plaintiffs.

Given Plaintiffs' Counsel's efforts in litigating this case and its success in negotiating a favorable settlement on Plaintiffs' behalf, Counsel is entitled to reasonable compensation.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully requests that this Honorable Court approve the Settlement Agreement in this case. A proposed Order is attached.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
**THE LAW OFFICES OF PETER T. NICHOLL**
Benjamin L. Davis, III
bdavis@nicholllaw.com
Kelly A. Burgy
kaburgy@nicholllaw.com

36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (410) 244-7005

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE FLSA COLLECTIVE CLASS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on all attorneys of record via this Court's electronic case filing system on the 22nd day of January, 2021.

Todd R. Shinaman
NIXON PEABODY LLP
1300 Clinton Square
Rochester, NY 14604
tshinaman@nixonpeabody.com

Stephen J. Jones
NIXON PEABODY LLP
1300 Clinton Square
Rochester, NY 14604
sjones@nixonpeabody.com

*Attorneys for Defendant*

                                                */s/ Benjamin L. Davis, III*